NING LILLY & JONES
MICHAEL A. LILLY    #1681
707 Richards Street, Suite 700
Honolulu, Hawaii  96813
Email: Michael@nljlaw.com
Telephone:  (808) 528-1100
Facsimile: (808) 531-2415

Attorneys for Plaintiffs
KELI'I AKINA, KEALII MAKEKAU,
JOSEPH KENT, YOSHIMASA SEAN
MITSUI, PEDRO KANA'E GAPERO,
and MELISSA LEINA'ALA MONIZ

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KELI'I AKINA, KEALII MAKEKAU, JOSEPH KENT, YOSHIMASA SEAN MITSUI, PEDRO KANA'E GAPERO, and MELISSA LEINA'ALA MONIZ, <br><br> Plaintiffs, <br><br> vs. <br><br> THE STATE OF HAWAII; GOVERNOR DAVID Y. IGE, in his official capacity; ROBERT K. LINDSEY JR., Chairperson, Board of Trustees, Office of Hawaiian Affairs, in his official capacity; COLETTE Y. MACHADO, PETER APO, HAUNANI APOLIONA, ROWENA M.N. AKANA, JOHN D. WAIHE'E IV, CARMEN HULU LINDSEY, DAN AHUNA, LEINA'ALA AHU ISA, Trustees, Office of Hawaiian Affairs, in their official capacities; KAMANA'OPONO CRABBE, Chief Executive Officer, Office of Hawaiian | CIVIL NO: _____ <br><br> COMPLAINT <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> (Caption continued on next page) |

Affairs, in his official Capacity; JOHN D.
WAIHE'E III, Chairman, Native Hawaiian
Roll Commission, in his official
Capacity; NĀ'ĀLEHU ANTHONY, LEI
KIHOI, ROBIN DANNER, MĀHEALANI
WENDT, Commissioners, Native Hawaiian
Roll Commission, in their official capacities;
CLYDE W. NĀMU'O, Executive Director,
Native Hawaiian Roll Commission, in his
official capacity; THE AKAMAI
FOUNDATION; and THE NA'I AUPUNI
FOUNDATION; and DOE DEFENDANTS
1-50,

                Defendants.

# COMPLAINT

Plaintiffs, by their attorneys, bring this action for declaratory and injunctive

relief and allege as follows:

## INTRODUCTION

1.    Plaintiffs are individual registered voters who seek declaratory and

injunctive relief to enjoin race-based, viewpoint-based, and other restrictions and

qualifications imposed by Hawaii law and enforced by agents of the State of

Hawaii on those seeking to register as voters on a list (the "Roll") maintained by

the defendants.  Voters who are on the Roll will be entitled to vote for the

delegates to a proposed constitutional convention, the intended purpose of which is

to choose a form of government under which Native Hawaiians would govern

themselves.  Plaintiffs allege that the restrictions on registering for the Roll violate

the U.S. Constitution, including the Equal Protection Clause of the Fourteenth Amendment, the Fifteenth Amendment, the First Amendment, and the Due Process Clause of the Fourteenth Amendment; and federal law, including the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301.

2.     Plaintiffs seek (1) a declaratory judgment that these voting restrictions and qualifications violate their constitutional and federal statutory rights; (2) a permanent injunction against their further use or implementation; and (3) costs and attorneys' fees.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1357; 42 U.S.C. §§ 1983 and 1988; and 52 U.S.C. §§ 10301 and 10308. Furthermore, this Court has jurisdiction over Plaintiffs' request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Jurisdiction for Plaintiffs' claim for attorneys' fees is based on 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

4.     This Court has personal jurisdiction over the defendants, all of whom are officials, employees, or agents of the State of Hawaii, and all of whom are Hawaii residents.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

3

## PARTIES

6.     Plaintiff Keli'i Akina is a citizen and a resident of the State of Hawaii, and a registered voter.  He is a descendant of the aboriginal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawaiian islands.  Mr. Akina was prevented from registering as a voter on the Roll because of viewpoint-based and other restrictions and qualifications imposed and enforced by the defendants.

7.     Plaintiff Kealii Makekau is a citizen and a resident of the State of Hawaii, and a registered voter.  He is a descendant of the aboriginal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawaiian islands.  Mr. Makekau was prevented from registering as a voter on the Roll because of viewpoint-based and other restrictions and qualifications imposed and enforced by the defendants.

8.     Plaintiff Joseph Kent is a citizen and resident of the State of Hawaii, and a registered voter.  Mr. Kent was prevented from registering as a voter on the Roll because of race-based and other restrictions and qualifications imposed and enforced by the defendants.

9.     Plaintiff Yoshimasa Sean Mitsui is a citizen and resident of the State of Hawaii, and a registered voter.  Mr. Mitsui was prevented from registering as a voter on the Roll because of race-based and other restrictions and qualifications imposed and enforced by the defendants.

10.     Plaintiff Pedro Kana'e Gapero is a citizen and resident of the State of Hawaii, and a registered voter.  He is a descendant of the aboriginal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawaiian islands.  Mr. Gapero was registered for the Roll without his knowledge or consent.

11.     Plaintiff Melissa Leina'ala Moniz is a citizen and resident of the State of Texas.  She is a descendant of the aboriginal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawaiian islands.  Ms. Moniz was registered for the Roll without her knowledge or consent.

12.     Defendant State of Hawaii is a sovereign state in the United States of America.

13.     Defendant David Y. Ige is the Governor of the State of Hawaii, and is being sued in his official capacity as the State officer charged with responsibility for the faithful execution of the laws of Hawaii as well as those of the United States.  The Governor resides at 320 South Beretania Street, Honolulu, Hawaii 96813.

14.     Defendant Robert K. Lindsey Jr. is the Chairperson of the Board of Trustees of the Office of Hawaiian Affairs ("OHA"), and is being sued in his official capacity.  OHA is a department of the State of Hawaii, and has basic responsibilities relating to the maintenance of the Roll, including, but not limited to, responsibility for funding the Native Hawaiian Roll Commission and for

cooperating with it in the performance of its duties. *See* Act 195, 2011 Legislative Session (codified in chapter 10H, Hawaii Revised Statutes) ("Act 195"), §§ 4, 5. OHA's principal place of business is 560 North Nimitz Highway, Honolulu, Hawaii 96817.

15.     Defendants Colette Y. Machado, Peter Apo, Haunani Apoliona, Rowena M.N. Akana, John D. Waihe'e IV, Carmen Hulu Lindsey, Dan Ahuna, and Leina'ala Ahu Isa are the other Trustees of the Board of Trustees of OHA. Defendant Kamana'opono Crabbe is the Chief Executive Officer of OHA.   These defendants are being sued in their official capacities.

16.     Defendant John D. Waihe'e III is the Chairman of the Native Hawaiian Roll Commission (the "NHRC"), and is being sued in his official capacity.  The NHRC was established by Act 195 to be the agency most directly responsible for preparing and maintaining the Roll and for certifying that voters who register for the Roll meet its requirements. HAW. REV. STAT. § 10H-3.  The principal place of business of the NHRC is 1960 Naio Street, Honolulu, Hawaii, 96817.

17.     Defendant Nā'ālehu Anthony is the Vice-Chairman and a Commissioner, and Defendants Lei Kihoi, Robin Danner, and Māhealani Wendt are the other Commissioners, of the NHRC.  Defendant Clyde W. Nāmu'o is the Executive Director of the NHRC.  These defendants are being sued in their official

capacities.

18.   Defendant The Akamai Foundation ("AF") is, on information and belief, a 501(c)(3) nonprofit organization existing under the laws of the State of Hawaii, with its principal place of business at 1136 Union Mall, Honolulu, Hawaii 96813.  AF has entered into contracts with OHA and The Na'i Aupuni Foundation pursuant to which OHA agreed to provide about $2.6 million to AF, which AF in turn agreed to grant to The Na'i Aupuni Foundation to conduct an election in which voters registered on the Roll will elect delegates to a constitutional convention.

19.   Defendant The Na'i Aupuni Foundation ("NAF") is, on information and belief, a domestic, nonprofit organization, with its principal place of business at 745 Fort Street, Honolulu, Hawaii, 96813.  On information and belief, NAF was created for the sole purpose of conducting an election in which those voters who are registered on the Roll will elect delegates to a constitutional convention.

20.   Doe Defendants 1-50 are persons, partnerships, associations, companies, corporations, or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiffs or their attorneys, except that Doe Defendants 1-50 were and/or are subsidiaries, servants, employees, representatives, co-venturers, associates, consultants, owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of Defendants and were

or are in some manner presently unknown to Plaintiffs or their attorneys engaged or involved in the activities alleged herein or responsible for the activities of which Plaintiffs complain, or should be subject to the relief Plaintiffs seek.  Plaintiffs pray for leave to certify the true names, identities, capacities, activities and/or responsibilities of Doe Defendants 1-50 when, through further discovery in this case, the same are ascertained.  Plaintiffs have made a good faith effort to identify said Doe Defendants prior to filing this Complaint, including interviewing witnesses and reviewing publicly available documents.

## FACTUAL ALLEGATIONS

### Background

21.     The Hawaii Homes Commission Act ("HHCA") was enacted by Congress in 1920 to address concerns over poverty and population decline among the native population of Hawaii.  H.R. Rep. No. 839, 66th Cong., 2nd Sess. at 4 (1920).  The HHCA defined "Native Hawaiian" as "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."  The HHCA made about 200,000 acres of public lands available to lease to such native Hawaiians at nominal prices.  HHCA §§ 201, 203.

22.     When Hawaii was admitted as the fiftieth state in 1959, Congress granted the government of Hawaii title to certain lands previously held by the United States, including the lands set aside by the HHCA.  These lands were to be

held in a "public trust" for certain specified purposes. Hawaii Statehood

Admission Act of March 18, 1959, Pub. L. No. 86-3, 73 Stat. 4 ("Admission Act");

Intro., § 5(b).

23.    One purpose was "the betterment of the conditions of native

Hawaiians" as defined in the HHCA. Admission Act § 5(f). The other four

purposes, which applied to all Hawaiians, were "the support of the public schools

and other public educational institutions . . . the development of farm and home

ownership on as widespread a basis as possible . . . the making of public

improvements, and . . . the provision of lands for public use." Admission Act §

5(f).

24.    In 1978, the Hawaii Constitution was amended to establish OHA.

HAW. CONST. ART. XII, § 5. The Hawaii Constitution provides that OHA "shall

hold title to all the real and personal property now or hereafter set aside or

conveyed to it which shall be held in trust for native Hawaiians and Hawaiians."

*Id.* OHA has been granted statutory authority to administer 20% of all funds

derived from the public land trust, exclusive of lands set aside pursuant to the

HHCA. HAW. REV. STAT. §§ 10-3, 10-13.5.

25.    The Hawaii Constitution provided that OHA's board of trustees shall

be "elected by qualified voters who are Hawaiians, as provided by law. The board

members shall be Hawaiians." HAW. CONST. ART. XII, § 5. "Hawaiian" is defined

by Hawaii law as "any descendant of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawaii." HAW. REV. STAT. § 10-2.

26.    In 2000, the United States Supreme Court struck down Hawaii's requirement that only "Hawaiians," as defined by Hawaii law, could vote for the trustees of OHA, on the ground that this voting restriction violated the Fifteenth Amendment to the U.S. Constitution. *Rice v. Cayetano*, 528 U.S. 495, 524 (2000). In the course of that ruling, the Court observed that "[a]lthough it is apparent that OHA has a unique position under state law, it is just as apparent that it remains an arm of the State." *Id.* at 521.  The Court also observed that Hawaii's law used "ancestry" as "a proxy for race." *Id.* at 514.

27.    In 2002, the United States Court of Appeals for the Ninth Circuit struck down Hawaii's requirement that candidates for OHA be "Hawaiians," as defined by Hawaii law, as a violation of the Fifteenth Amendment of the U.S. Constitution and of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. *Arakaki v. State of Hawaii*, 314 F.3d 1091, 1098 (9th Cir. 2002).

## Act 195

28.    In July 2011, Hawaii Governor Neil Abercrombie signed Act 195 into law.

29.   Act 195 provides that the "purpose of this chapter is to provide for and to implement the recognition of the Native Hawaiian people by means and methods that will facilitate their self-governance . . ." HAW. REV. STAT. § 10H-2.

30.   Act 195 establishes the NHRC as a subdivision within OHA for administrative purposes, and charges it with responsibility for "[p]reparing and maintaining a roll of qualified Native Hawaiians" and "[c]ertifying that the individuals on the roll of qualified Native Hawaiians meet the definition of qualified Native Hawaiians." HAW. REV. STAT. § 10H-3(a).

31.   Act 195 states that the "the roll of qualified Native Hawaiians . . . is intended to facilitate the process under which qualified Native Hawaiians may independently commence the organization of a convention of qualified Native Hawaiians, established for the purpose of organizing themselves." HAW. REV. STAT. § 10H-5.

32.   Act 195 provides that a "qualified Native Hawaiian" means an individual whom the NHRC has determined to meet certain criteria of eligibility established by the Act.  The first criterion is based on ancestry, and defines a qualified Native Hawaiian as one who is "a descendant of the aboriginal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawaiian islands, the area that now constitutes the State of Hawaii"; one who was eligible in 1921 for an HHCA lease, or is a descendant of such a person; or one who meets "the

11

ancestry requirements of Kamehameha Schools or of any Hawaiian registry program of the office of Hawaiian affairs."

33.    Act 195 further specifies that a "qualified Native Hawaiian" must have "maintained a significant cultural, social, or civic connection to the Native Hawaiian community"; and must also "wish[] to participate in the organization of the Native Hawaiian governing entity."

**The Process of Registering for the Roll**

34.    Starting in July 2012, prospective voters could register for the Roll.

35.    On information and belief, many tens of thousands of registrants currently on the Roll were placed there without their knowledge or consent, when their names were transferred from other lists containing the names of Native Hawaiians.

36.    Plaintiffs Gapero and Moniz were placed on and registered for the Roll without their knowledge or consent.

37.    On information and belief, registration was closed and subsequently reopened one or more times since July 2012.

38.    Registration for the Roll is at present open.

39.    Registration is available online at http://www.kanaiolowalu.org/.  The screen at that website has a clickable area labeled "REGISTER."  Placing the cursor over that area reveals two options, "REGISTER (HAWAIIANS)" and

"SIGN THE PETITION (EVERYONE)."

40.    Selecting "SIGN THE PETITION (EVERYONE)" does not allow the option of registering for the Roll, but only allows one to express support for the Roll, for "the efforts of the Native Hawaiian people to restore self-governance to the Hawaiian Nation," for "the unrelinquished sovereignty of the indigenous people of Hawai'i," for the "commitment to bring recognition to the indigenous people of Hawai'i," and for "the movement to restore self-governance to the Hawaiian Nation."

41.    Selecting "REGISTER (HAWAIIANS)" returns a single screen, entitled "REGISTER NOW."  That screen contains three declarations; information boxes requesting name, birth information, and contact information; checkboxes requesting "Verification of Native Hawaiian Ancestry," and a clickable area labeled "CONFIRM INFO."

42.    The three declarations, which all prospective applicants must confirm, read as follows:

Declarations

- **Declaration One**. I affirm the unrelinquished sovereignty of the Native Hawaiian people, and my intent to participate in the process of self-governance.

- **Declaration Two**. I have a significant cultural, social or civic connection to the Native Hawaiian community.

- **Declaration Three**. I am a Native Hawaiian: a lineal descendant of the people who lived and exercised sovereignty in the Hawaiian islands prior to

1778, or a person who is eligible for the programs of the Hawaiian Homes Commission Act, 1920, or a direct lineal descendant of that person.

43.     The area labeled "Verification of Native Hawaiian Ancestry" reads as follows:

**Verification of Native Hawaiian Ancestry**
Please check all applicable categories. (at least one is required)
☐ My birth certificate lists (Part) Hawaiian
☐ One of my parents birth certificate lists (Part) Hawaiian
☐ Other official certificate/registry listing (Part) Hawaiian
☐ Attended The Kamehameha Schools
☐ Department of Hawaiian Home Lands lessee, renter, or wait list (verified)
☐ Operation Ohana
☐ Kau Inoa (ancestry confirmed)
☐ Kamehameha Schools Hoʻoulu Hawaiian Data Center
☐ Hawaiian Registry at OHA
☐ None of these fit but I can prove ancestry through another ancestor

44.     There is no way to register for the Roll without confirming the information, including the declarations and the verification checkboxes, contained on the page entitled "REGISTER NOW."

45.     Those plaintiffs who deliberately tried to register for the Roll were unable to confirm the truth of one or more of the declarations contained on the screen entitled "REGISTER NOW."

46.     Plaintiffs Akina and Makekau could not confirm the principles enunciated in Declaration One, although they could confirm their ties to the Native Hawaiian community (Declaration Two) and their Native Hawaiian ancestry (Declaration Three).  Further, they could have provided information sufficient to

14

satisfy the verification-of-ancestry checklist.

47.   Plaintiffs Kent and Mitsui could not confirm any of the declarations, nor could they have supplied information sufficient to satisfy the verification-of-ancestry checklist.

48.   As a result, none of these plaintiffs were able to register for the Roll.

**The Joint Conduct of OHA, NHRC, AF, and NAF**

49.   In the period from about April 27, 2015, to about May 4, 2015, representatives of OHA, AF, and NAF signed an agreement entitled "Grant Agreement Between the Akamai Foundation and the Office of Hawaiian Affairs for the Use and Benefit of Na'i Aupuni" ("Grant Agreement").  In sum and substance, the Grant Agreement authorizes the transfer from OHA to AF, for the use by NAF, of a grant in the total amount of $2,598,000.00.  The Grant Agreement provides that "AF will direct the use of the grant to [NAF] so it may facilitate an election of delegates, election and referendum monitoring, a governance 'Aha [constitutional convention], and a referendum to ratify any recommendation of the delegates arising out of the 'Aha ('Scope of Services')."

50.   On or about April 27, 2015, AF, as "Fiscal Sponsor," and NAF, as "Client," signed a "Fiscal Sponsorship Agreement Between Akamai Foundation and Na'i Aupuni" ("Sponsorship Agreement"), which sets forth, among other things, the "Na'i Aupuni Projected Budget," describing relevant election-related

tasks and describing the use of the entire grant amount described in the Grant Agreement.

51.    On or about May 7 and 8, 2015, OHA, AF, and NAF signed an agreement entitled "Letter Agreement Between Office of Hawaiian Affairs, Na'i Aupuni, and Akamai Foundation" ("Letter Agreement"), which provides, among other things, for an initial payment under the Grant Agreement.

52.    In the period from about June 18, 2015, to June 22, 2015, NAF and Election America, Inc. ("EAI"), a private company with its principal place of business in Mineola, New York, signed a contract whereby EAI would perform certain services relating to the Roll and the planned election for a constitutional convention, for a total compensation of $177,208.  That contract referred to the following schedule:

> **Tentative Project Timeline**
> E-A [EAI] will mail or email Notice of Election to known
> electorate…………..……July 15, 2015
> Deadline for submitting Delegate candidate
> Applications…………....September 15, 2015
> Deadline for E-A to determine eligibility of Delegate
> Candidates…....September 30, 2015
> Deadline for additions to
> electorate……………………………………..October 15, 2015
> Ballots mailed and/or emailed to known
> electorate………………..……..November 1, 2015
> Deadline for ballots to be
> received……………………………..………December 1, 2015

53.    In an article in the HONOLULU STAR ADVERTISER, dated July 5, 2015,

and written by Christine Donnelly, apparently based on conversations with representatives of NAF, the following schedule was made public:

> » Late July or early August: Notices sent to certified voters explaining the apportionment of delegates, how to file as a delegate candidate and the voting process. . . .
> » Late July or early August: Application available for delegate candidates.
> » Mid-September: Deadline to file as a delegate candidate.
> » End of September: List of qualified delegate candidates announced.
> » Mid-October: Voter registration closes.
> » Early November: Voting begins.
> » Early December: Voting ends.
> » Day after voting ends: Election results announced publicly.
> » Between February and April 2016: 'Aha held on Oahu over the course of eight consecutive weeks (40 work days, Monday through Friday).
> » Two months after 'aha concludes: If delegates recommend a form of Hawaiian government, a referendum will be held among all certified Native Hawaiian voters.

54.     On information and belief, OHA and the NHRC attempted to shield themselves from legal responsibility for setting up race-based, viewpoint-based, and other restrictions on voters and candidates in the proposed election based on the Roll by contracting with AF and NAF.

55.     In a letter dated July 14, 2015, the NHRC informed plaintiffs' counsel that OHA stopped funding the NHRC on June 30, 2015.

56.     On information and belief, some or all of the funds OHA previously allotted to the NHRC have been transferred instead to AF and NAF.

57.     Legal tasks NHRC previously was responsible for have been transferred to AF and NAF.

58.     As reflected in the written minutes of OHA's Board of Trustees'
meeting of February 26, 2015, "Trustee Ahu Isa questioned the legality and
allowability of using trust monies to fund Kana'iolowalu [the election effort based
on the Roll]."  Trustee Hulu Lindsey then asked how OHA will be able to monitor
the use of their funds.  After a few further comments, Mr. Meheula of NAF stated
that "once a fiscal sponsor is identified [AF eventually was so identified], they will
execute a three-party agreement between OHA, the fiscal sponsor, and Na'i
Aupuni.  That agreement will spell out some of OHA's concerns, but will also give
Na'i Aupuni autonomy to decide on their own."  At that point, "Trustee Apo"
stated that he "believes that this is a very tricky navigation required.  He is overly
cautious [sic] that if we keep tying ourselves to this, we are going to get sued.  He
believes OHA has to stop talking about making people accountable to us."  On
information and belief, OHA's trustees intended to achieve the goals of Act 195
but planned to use nonprofit surrogates in order to do so.

59.     Under the relevant law, AF and NAF are both state actors.  The State
of Hawaii cannot avoid liability for its constitutional and statutory transgressions
by the simple trick of contracting with nonprofits.

60.     OHA is a state agent defined in the Hawaii Constitution, and has been
expressly found by the Supreme Court to be "an arm of the State" (*Rice v.
Cayetano*, 528 U.S. at 521).

18

61.     The NHRC was established under Hawaii law by Act 195 for a public purpose, and received its funding from OHA (Act 195, Section 4).  The NHRC equally is a state actor.

62.     OHA actively favors and is pursuing the purposes set forth in Act 195, and specifically, the intent to utilize a list of "qualified Native Hawaiians" to select delegates to a constitutional convention that would establish rules for Native Hawaiians' self-governance.

63.     For example, on OHA's website at http://www.oha.org/, a clickable area reads as follows:

GOVERNANCE
Laying the foundation for building a new Hawaiian governing entity

Our focus on governance involves facilitating a process for Native Hawaiians to form a governing entity. A recognized governing entity would solidify Native Hawaiians as a political rather than racial group, safeguarding trusts, programs, and funding sources serving Native Hawaiians. A governing entity could advocate and negotiate greater self-sufficiency and autonomy for Native Hawaiians.

64.     Upon selecting that area, another screen appears containing, in relevant part, the following text (emphasis added):

Governance
Strategic Priority: Ea [sovereignty]
       To restore pono and ea, Native Hawaiians will achieve *self-governance, after which the assets of OHA will be transferred to the new governing entity*.
       Why is this important?
       Native Hawaiian self-governance is of utmost importance to our organization's efforts to improve conditions for Native Hawaiians. *A key*

19

*goal of our efforts is to facilitate a process that gives Hawaiians the opportunity to re-develop a government that reaffirms Native Hawaiians as a political rather than racial group.*

The benefit of such a Native Hawaiian government is its ability to provide Native Hawaiians with greater control over their destiny as they *move toward self-determination* and self-sufficiency. Native Hawaiian programs and assets that benefit Native Hawaiians can be attacked in federal courts if political recognition from the federal government is not extended to Native Hawaiians.

* * *

*What is our aim?*
*The transfer of assets to a new governing entity*
*Adoption by the Board of Trustees of a Transition Plan that includes the legal transfer of assets and other resources to the new Native Hawaiian governing entity.*

* * *

OHA's goal is *for all Native Hawaiians* to participate in the nation-building process and allow them to decide what form a Hawaiian nation will take and what sort of relationships it will seek with other government [sic].

*The emergence of a Native Hawaiian government is extremely important to the Office of Hawaiian Affairs.*

For that reason, *OHA is putting a lot of effort into encouraging Native Hawaiians to participate in the process* to ensure their voices are heard.

In March 2014, OHA's Board of Trustees made public the agency's commitment to helping smooth the way for Native Hawaiians to build a government.

Since then, OHA has launched an outreach campaign aimed at informing the public about the nation-building process. The campaign featured 20 town hall-style meetings across the state as well as canvassing in Hawaiian homestead communities, where volunteers knocked on doors to familiarize Native Hawaiians with this new opportunity to better manage their future.

65.    The website contains other information and videos supporting the

same goals.

66.    The NHRC actively favors and is pursuing the purposes set forth in

Act 195.

67.    On the NHRC website, virtually every page contains some expression of support for the purposes of Act 195.

68.    Private actors who perform a public function at the direction or request of state actors thereby become state actors.

69.    The conduct of elections is exclusively a public function.

70.    By seeking to conduct, and by conducting, an election based on the Roll, AF and NAF have become state actors subject to the restraints of federal constitutional and statutory law.

71.    Joint action exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party.

72.    By signing, and by paying for, agreements with AF and NAF to carry out the very purposes that OHA has expressly stated it wants to achieve, OHA has affirmed, authorized, encouraged, and facilitated the wrongful action that is the subject of this lawsuit, thereby rendering AF and NAF state actors subject to the restraints of federal constitutional and statutory law.

73.    State compulsion exists where a state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the private actors' choices are deemed to be those of the State.

74.    By signing, and by paying for, agreements with AF and NAF, OHA

21

provided such covert encouragement that AF's and NAF's choices should be deemed those of the State of Hawaii.

75.    A private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action, so that the action of the private party may be fairly treated as that of the State itself.

76.    The detailed, written agreements, paid for by OHA, to accomplish the very purposes OHA has expressly sought to achieve, establish a close nexus between OHA and AF and NAF, such that their actions should be treated as state action.

**The Need for Section 3(c) Relief**

77.    This is the third lawsuit, following *Rice v. Cayetano* and *Arakaki v. State of Hawaii*, arising out of an attempt by Hawaiian officials to use race-based qualifications to restrict who may register and vote, and who may run for office, for particular Hawaiian elections.  In this case, moreover, trustees of OHA expressly discussed the possibility of being sued for their actions, while seeking to accomplish their discriminatory goals by using contractually bound nonprofit organizations as surrogates.

78.    In the absence of relief under Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c), Hawaii will continue to violate the Voting Rights Act and the voting guarantees of the Fourteenth and Fifteenth Amendments.

# CLAIMS

## Claims Alleging Race-Based Restrictions and Qualifications Relating to Voting

### COUNT 1: Violation of the Fifteenth Amendment and 42 U.S.C. § 1983.

79.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

80.     Act 195 and the registration process used by the defendants restrict who may register for the Roll on the basis of individuals' Hawaiian ancestry.

81.     The defendants fully intended to restrict who may register for the Roll on the basis of ancestry, as shown by the plain text of Act 195 as well as the text of the online registration procedures, and as shown by numerous public statements by the defendants, including those made on their registration website.

82.     Ancestry, in the context of Act 195 and the defendants' registration procedures, is a proxy for race.

83.     The registration process used by the defendants is conduct undertaken under color of Hawaii law, and, specifically, under Act 195.

84.     Act 195 and the defendants' registration procedures deny and abridge the rights of Plaintiffs Kent and Mitsui to vote on account of race, in violation of the Fifteenth Amendment.

**COUNT 2: Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.**

85.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

86.    Act 195 and the registration process used by the defendants discriminate against Plaintiffs Kent and Mitsui on account of the fact that they are not Native Hawaiians, as defined by their ancestry.

87.    Accordingly, Act 195 and the registration process used by the defendants discriminate against Plaintiffs Kent and Mitsui on account of their race.

88.    The registration process used by the defendants is conduct undertaken under color of Hawaii law, and, specifically, under Act 195.

89.    Act 195 and the registration process used by the defendants violate the rights of Plaintiffs Kent and Mitsui under the Fourteenth Amendment to the equal protection of the laws.

**COUNT 3: Violation of Section 2 of the Voting Rights Act.**

90.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

91.    Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, proscribes any "qualification or prerequisite to voting or standard, practice, or procedure . . . imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on

account of race or color."

92.    Act 195 and the registration process used by the defendants restrict who may register for the Roll on the basis of individuals' Hawaiian ancestry, which is a proxy for race.

93.    The defendants fully intended to restrict who may register for the Roll on the basis of race.

94.    Act 195 intentionally discriminates, and has the result of discriminating, against Plaintiffs Kent and Mitsui on the basis of their race, in violation of Section 2 of the Voting Rights Act.

**Claims Alleging Viewpoint-Based Restriction Relating to Voting**

> **COUNT 4: Violations of the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.**

95.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

96.    Declaration One, which is part of the registration process available on the NHRC's website, requires an applicant to confirm this statement: "I affirm the unrelinquished sovereignty of the Native Hawaiian people, and my intent to participate in the process of self-governance."

97.    It is not possible to register for the Roll without confirming this statement.

98.   As a practical matter, requiring confirmation of this statement will stack the electoral deck, guaranteeing that Roll registrants will support the outcome favored by the defendants in any subsequent vote.

99.   Requiring agreement with Declaration One in order to register for the Roll is conduct undertaken under color of Hawaii law.

100.   By conditioning registration upon agreement with Declaration One, the defendants are compelling speech based on its content.

101.   Requiring agreement with Declaration One in order to register for the Roll discriminates against those who do not agree with that statement, including Plaintiffs Akina and Makekau.

102.   Forbidding those who do not agree with Declaration One, including Plaintiffs Akina and Makekau, to register for the Roll amounts to viewpoint discrimination.

103.   There is no compelling justification for requiring applicants to confirm their agreement with Declaration One.

104.   Forbidding those who do not agree with Declaration One to register for the Roll is a blatant violation of the rights of Plaintiffs Akina and Makekau under the First Amendment.

105.   Forbidding those who do not agree with Declaration One to register for the Roll is a classification based on speech, in violation of the rights of

Plaintiffs Akina and Makekau under the Fourteenth Amendment to the equal protection of the laws.

## Claims Alleging Race-Based Restrictions on Candidates

### COUNT 5: Violation of the Fifteenth Amendment and 42 U.S.C. § 1983.

106.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

107.   Act 195 states in part that its purpose is to "facilitate the process under which qualified Native Hawaiians may independently commence the organization of a convention *of qualified Native Hawaiians . . .*" HAW. REV. STAT. § 10H-5 (emphasis added).

108.   The June 2015 contract between NAF and Election America, Inc., specifies as part of its Tentative Project Deadline the following item:

Deadline for E-A to determine eligibility of Delegate

Candidates…......September 30, 2015

109.   On information and belief, the process for determining who may be a candidate for the proposed constitutional convention restricts candidacy to Native Hawaiians, as defined by Hawaii law.

110.   On information and belief, the nominating process for candidates is structured to ensure that only Native Hawaiians will become candidates.

111.   The disqualification of candidates based on race is conduct undertaken under color of Hawaii law.

112.   The disqualification of candidates based on race violates the Fifteenth Amendment rights of all Hawaii voters, including Plaintiffs Akina, Makekau, Kent, Mitsui, and Gapero.

### COUNT 6: Violation of Section 2 of the Voting Rights Act.

113.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

114.   The disqualification of candidates based on race ensures that the political processes leading to nomination or election in the State are not equally open to participation by citizens who are not Hawaiian.

115.   The disqualification of candidates based on race results in a discriminatory abridgement of the right to vote.

116.   The disqualification of candidates based on race is a violation of Section 2 of the Voting Rights Act.

## Claim Alleging Unjustified Qualification Based on Community Ties

### COUNT 7: Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

117.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

118.   Declaration Two, which is part of the registration process available on the NHRC's website, requires an applicant to confirm this statement: "I have a significant cultural, social or civic connection to the Native Hawaiian community."

119.   Plaintiffs Kent and Mitsui cannot affirm this statement as they understand it.

120.   Requiring Plaintiffs Kent and Mitsui to confirm this statement – and, in consequence, requiring them to have such connections to the Native Hawaiian community – is a burden on Plaintiffs Kent and Mitsui that is not required for the sake of election integrity, administrative convenience, or any other sufficient reason.

121.   Voting is a fundamental right subject to equal protection guarantees under the Fourteenth Amendment.

122.   Voting qualifications that inflict discriminatory burdens without justification are invalid under the Fourteenth Amendment.

123.   Requiring Plaintiffs Kent and Mitsui to have particular connections with the Native Hawaiian community violates the rights of Plaintiffs Kent and Mitsui under the Fourteenth Amendment to the equal protection of the laws.

**Claim Alleging Impairment of Fundamental Right to Vote**

> **COUNT 8: Violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.**

124.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

125.   Voting is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

126.   By requiring Plaintiffs to confirm Declarations One, Two, and Three, the registration process used by the defendants will cause the planned election to be conducted in a manner that is fundamentally unfair.

127.   By requiring Plaintiffs to confirm Declarations One, Two, and Three, the registration process used by the defendants burdens the right to vote of all Plaintiffs in violation of their constitutional rights to Due Process.

**Claim Alleging Compelled Speech by Virtue of Involuntary Registration.**

> **COUNT 9: Violation of the First Amendment and 42 U.S.C. § 1983.**

128.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

129.   The First Amendment protects both the right to speak freely and the right to refrain from speaking at all.

130.   Voter registration is speech protected by the First Amendment.

131.   Forcibly registering an individual amounts to compelled speech.

132.   In addition, forcibly registering an individual under conditions that imply that that individual agrees with particular statements or opinions amounts to compelled speech.

133.   The NHRC publishes and prominently displays the total number of individuals registered for the Roll on its website, as a way to bolster the legitimacy of the Roll.

134.   Plaintiffs Gapero and Moniz do not wish to bolster the legitimacy of the Roll.

135.   By publishing and displaying the total number of individuals registered for the Roll on its website, the NHRC implies that those individuals have agreed to Declaration One.

136.   Plaintiffs Gapero and Moniz have not agreed, and do not agree, with Declaration One.

137.   By registering Plaintiffs Gapero and Moniz without their consent and without notice to them, the NHRC compelled their speech and violated their First Amendment right to refrain from speaking.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully pray that this Court:

1.     Issue a declaratory judgment finding that the registration procedures

relating to the Roll violate the U.S. Constitution and federal law, as set forth above;

2.     Issue preliminary and permanent relief enjoining the defendants from requiring prospective applicants for any voter roll to confirm Declaration One, Declaration Two, or Declaration Three, or to verify their ancestry;

3.     Issue preliminary and permanent relief enjoining the use of the Roll that has been developed using these procedures, and the calling, holding, or certifying of any election utilizing the Roll;

4.     Order Defendants to pay reasonable attorneys' fees incurred by Plaintiffs, including litigation expenses and costs, pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988;

5.     Retain jurisdiction under Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c), for such a period as the Court deems appropriate and decree that, during such period, no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force at the time this proceeding was commenced shall be enforced by Defendants unless and until the Court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color;

6.     Retain jurisdiction to issue any and all further orders that are necessary to satisfy the ends of justice; and

7.    Award Plaintiffs any and all further relief that this Court deems just

and proper.

DATED:  Honolulu, Hawaii, <u>August 13, 2015</u>.


<u>/s/ Michael A. Lilly</u>
MICHAEL A. LILLY
Attorney for Plaintiffs
KELI'I AKINA, KEALII
MAKEKAU, JOSEPH KENT,
YOSHIMASA SEAN MITSUI,
PEDRO KANA'E GAPERO,
and MELISSA LEINA'ALA
MONIZ