# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KELI'I AKINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF HAWAII, et al., <br><br> Defendants, <br><br> and <br><br> SAMUEL L. KEALOHA, JR., et al., <br><br> Intervenor-Defendants. | Case 1:15-CV-00322-JMS-BMK <br><br> DECLARATION OF SAMUEL L. KEALOHA, JR. |

### DECLARATION OF SAMUEL L. KEALOHA, JR.

SAMUEL L. KEALOHA, JR., pursuant to 28 U.S.C. § 1746, under penalty of perjury, and deposes and says as follows:

1. I am one of the parties attempting to intervene in the above-captioned matter.

2. I am a U.S. Army Vietnam-Era veteran who served in Vietnam, 1st Cav. 2-5.

3. I am a "native Hawaiian" as defined in Section 201(a) of the Hawaiian Homes Commission Act, in that I am a descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778.

4. In 1977, I applied for and been determined by the Department of Hawaiian

Home Lands of the State of Hawaii to be qualified to receive a homestead award under the Hawaiian Homes Commission Act, made binding upon the State of Hawaii by the State-Federal Compact in Section 4 of the Hawaii Admission Act.

5. I have been on the waiting list ever since.

6. The reason the State has given for its failure to deliver a homestead is that they "lost" my application.

7. I have significant cultural, social, and civic connections with the native Hawaiian community.

8. My main interest is full implementation of the HHCA, rehabilitation and self-determination of native Hawaiians, use of § 5(f) monies to benefit native Hawaiians and to settle the homelands.

9. I strongly object to the inclusion of Hawaiians having less than one-half part of the blood participating in the organization of any entity purporting to represent native Hawaiians of the blood.

10. I support the right of native Hawaiians to self-determination, in particular to their right to determine for themselves the blood quantum necessary for membership in any native Hawaiian governing entity.

11. My interest is in this case is the concern that the parties here, both the State and its OHA, are not speaking on behalf of native Hawaiian beneficiaries. They are talking over us. The scheme of undermining the native Hawaiians' interest in § 5(f)

and it being subject to corruption has gone on too long. The State came up with this charade of OHA, and the U.S. has not brought suit against the State for breach of trust under § 5(f). The United States should know the difference between Congress' definition of native Hawaiian of 1920, (that the state solemnly accepted in 1959,) versus the State's made-up definition of 'Hawaiian' in 1978, when it manufactured the OHA scheme created to undermine growing native Hawaiian interests in § 5(f).

12. I am a former OHA trustee, and can provide this Court a unique vantage from a native Hawaiian.

13. As Trustee, I was too often out-voted by "Hawaiian" trustees (hostile to native Hawaiians), who sought to benefit themselves and this diluted class of "Hawaiians," including their friends, relatives and others who are not native Hawaiian, with lucrative contracts.

14. I have witnessed the State's OHA agency misspend § 5(f) proceeds that could have been used to fund the HHCA.

15. On December 1, 2001, I along with three other Intervenors, Ka Lahui Hawaii and the Anahola Homesteaders Association filed a complaint in the U.S. District Court for the District of Hawaii, Civil No. 01-817, against Gale Norton, Secretary of the Department of the Interior, seeking to establish the right of native Hawaiians to organize themselves into sovereign tribal entities, as provided in the Indian Reorganization Act of 1934, 25 U.S.C., § 461 et seq., but excluded from doing

so by 25 C.F.R. § 83.1.

16. On October 13, 2005, I along with the other Intervenors filed a complaint against the Trustees of the Office of Hawaiian Affairs, in the U.S. District Court for the District of Hawaii, Civil No. 05-649 seeking to prevent OHA from expending proceeds of the § 5(f) trust for the benefit of Hawaiians without regard to the not less than one-half part of the blood as defined by the HHCA, based upon §§ 4 and 5(f) of the Hawaii Admission Act.

17. In January, 2009, I along with the other Intervenors filed an amicus brief in the United States Supreme Court in *State of Hawaii v. Office of Hawaiian Affairs*, No. 07-1372.

18. In that case, OHA was attempting to prevent the sale of § 5(f) lands by the State of Hawaii purportedly on the grounds of claims by native Hawaiians. In our brief we took the position that OHA was making claims on behalf of Hawaiians without regard to the not less than one-half part blood quantum in the HHCA and § 5(f), and that OHA's argument was valid only if the blood quantum were restricted to not less than one-half part.

19. On March 23, 2011, I along with the other Intervenors filed a complaint against the Trustees of the Office of Hawaiian Affairs, in the Circuit Court of the First Circuit, State of Hawaii, Civil No. 11-1-575, seeking to prevent OHA from expending proceeds of the § 5(f) trust for the benefit of Hawaiians without regard to the not less

-4-

than one-half part of the blood as defined by the HHCA, based upon state law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22 day of September, 2015, at Molokai, Hawaii.

_____
SAMUEL L. KEALOHA, JR.