IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KELI'I AKINA, et al., | Case 1:15-CV-00322-JMS-BMK |
| Plaintiffs, | |
| v. | DECLARATION OF MELVIN HOOMANAWANUI |
| STATE OF HAWAII, et al., | |
| Defendants, | |
| and | |
| SAMUEL L. KEALOHA, JR., et al, | |
| Intervenor-Defendants. | |

## DECLARATION OF MELVIN HOOMANAWANUI

MELVIN HOOMANAWANUI, pursuant to 28 U.S.C. § 1746, under penalty of perjury, and deposes and says as follows:

1. I am one of the parties attempting to intervene in the above-captioned matter.

2. I was born in 1940 and was raised in Honolulu in the Territory of Hawaii, before it became a state of Hawaii. I graduated from McKinley High School in 1958 and became a firefighter with the City and County of Honolulu 1964.

3. I am a "native Hawaiian" as defined in Section 201(a) of the Hawaiian Homes Commission Act, in that I am a descendant of not less than one-half part of

-1-

the blood of the races inhabiting the Hawaiian Islands previous to 1778.

4. I strongly object to the inclusion of Hawaiians having less that one-half part of the blood participating in the organization of an entity purporting to represent native Hawaiians of the blood.

5. I was always interested in politics and was introduced to the § 5(f) trust in 1978 when the Trask sisters and Mitzuo Uyehara talked to a group of us.

6. It was through Mitzuo Uyehara that I learned more of the land trust.

7. I supported and lobbied at the State Legislature in the 1980's with the Sand Island struggle to provide a "Cultural Live-in Park" like the Kokee Park in Kauai which allowed residents to live in State Parks under a 22 year lease.

8. Sand Island is "Ceded Land" that would have qualified under the § 5(f) trust for native Hawaiians as beneficiaries.

9. I was also involved with Malama Ka Aina who filed a lawsuit against the United States Department of the Interior regarding DHHL lease lands to non-natives and Hawaiians who do not meet the blood quantum.

10. We were successful with the Interior Department coming to the State of Hawaii to ratify and speed up leases to the native Hawaiians who were not awarded leases from the DHHL program.

11. On October 13. 2005, I along with the other Intervenors filed a complaint against the Trustees of the Office of Hawaiian Affairs, in the U.S. District Court for

the District of Hawaii, Civil No. 05-649 seeking to prevent OHA from expending proceeds of the § 5(f) trust for the benefit of Hawaiians without regard to the not less than one-half part of the blood as defined by the HHCA, based upon §§ 4 and 5(f) of the Hawaii Admission Act.

12. In January, 2009, I along with the other Intervenors filed an amicus brief in the United States Supreme Court in *State of Hawaii v. Office of Hawaiian Affairs*, No. 07-1372.

13. In that case, OHA was attempting to prevent the sale of § 5(f) lands by the State of Hawaii purportedly on the grounds of claims by native Hawaiians. In our brief we took the position that OHA was making claims on behalf of Hawaiians without regard to the not less than one-half part blood quantum in the HHCA and § 5(f), and that OHA's argument was valid only if the blood quantum were restricted to not less than one-half part.

14. On March 23, 2011, I along with the other Intervenors filed a complaint against the Trustees of the Office of Hawaiian Affairs, in the Circuit Court of the First Circuit, State of Hawaii, Civil No. 11-1-575, seeking to prevent OHA from expending proceeds of the § 5(f) trust for the benefit of Hawaiians without regard to the not less than one-half part of the blood as defined by the HHCA, based upon state law.

15. Yet, here we are today still fighting for native Hawaiians rights.

16. In 1997 my wife, Odetta I. Hoomanawanui was asked to participate in

home ownership in the Villages of Laio' pua in Kailua Kona under the DHHL program.

17. Due to the required qualifications, she was awarded a DHHL home and property ownership in 1998 with the Laio'pua Villages 3, the first of the villages which there are many more to come in Kailua Kona.

18. Because occupancy requires the lessee to live in the home 4 out of 7 days weekly, my wife had to surrender her lease over to me, Melvin Hoomanawanui because of her occupation which was in Honolulu.

19. Therefore I had to prove my qualifications on my blood quantum and native Hawaiian status.

20. I am currently the lessee of our home and property under the DHHL program.

I declare under penalty of perjury under the laws of the Unitd States that the foregoing is true and correct.

Executed this 20th of September, 2015, at _Kailua, KONA_, Hawaii.

_/s/ Melvin Hoomanawanui_
MELVIN HOOMANAWANUI

-4-