MᴄCORRISTON MILLER MUKAI MᴀcKINNON LLP

ROBERT G. KLEIN          #1192-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813
Telephone: (808) 529-7300
Facsimile: (808) 524-8293
Email: *rklein@m4law.com*

WILLIAMS & CONNOLLY LLP

KANNON SHANMUGAM      *(pro hac vice)*
ELLEN OBERWETTER      *(pro hac vice)*
ELI SCHLAM            *(pro hac vice)*
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: *kshanmugam@wc.com; coberwetter@wc.com;*
       *eschlam@wc.com*

Attorneys for Defendants
ROBERT K. LINDSEY JR., Chairperson, Board of
Trustees, Office of Hawaiian Affairs, in his official capacity;
COLETTE Y. MACHADO, PETER APO, HAUNANI
APOLIONA, ROWENA M.N. AKANA, JOHN D. WAIHEʻE IV,
CARMEN HULU LINDSEY, DAN AHUNA, LEINAʻALA
AHU ISA, Trustees, Office of Hawaiian Affairs, in their official
capacities; KAMANAʻOPONO CRABBE, Chief Executive Officer,
Office of Hawaiian Affairs, in his official capacity

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KELIʻI AKINA, KEALII MAKEKAU, JOSEPH KENT, YOSHIMASA SEAN MITSUI, PEDRO KANAʻE GAPERO, and MELISSA LEINAʻALA MONIZ, | CIVIL NO. 15-00322 JMS-BMK |
| | DEFENDANTS ROBERT K. LINDSEY JR., COLETTE Y. |
| Plaintiffs, | *[Caption continued on next page]* |

vs.

THE STATE OF HAWAII;
GOVERNOR DAVID Y. IGE, in his official capacity; ROBERT K. LINDSEY JR., Chairperson, Board of Trustees, Office of Hawaiian Affairs, in his official capacity; COLETTE Y. MACHADO, PETER APO, HAUNANI APOLIONA, ROWENA M.N. AKANA, JOHN D. WAIHEʻE IV, CARMEN HULU LINDSEY, DAN AHUNA, LEINAʻALA AHU ISA, Trustees, Office of Hawaiian Affairs, in their official capacities; KAMANAʻOPONO CRABBE, Chief Executive Officer, Office of Hawaiian Affairs, in his official Capacity; JOHN D. WAIHEʻE III, Chairman, Native Hawaiian Roll Commission, in his official Capacity; NĀʻĀLEHU ANTHONY, LEI KIHOI, ROBIN DANNER, MĀHEALANI WENDT, Commissioners, Native Hawaiian Roll Commission, in their official capacities; CLYDE W. NĀMUʻO, Executive Director, Native Hawaiian Roll Commission, in his official capacity; THE AKAMAI FOUNDATION; and THE NAʻI AUPUNI FOUNDATION; and DOE DEFENDANTS 1-50,

Defendants.

MACHADO, PETER APO, HAUNANI APOLIONA, ROWENA M.N. AKANA, JOHN D. WAIHEʻE IV, CARMEN HULU LINDSEY, DAN AHUNA, LEINAʻALA AHU ISA, AND KAMANAʻOPONO CRABBE'S **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 47]**; DECLARATION OF KAMANAʻOPONO CRABBE; EXHIBITS "A" – "G"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE

**Hearing:**
Date:   October 20, 2015
Time:   9:30 a.m.
Judge:  Hon. Michael J. Seabright

# TABLE OF CONTENTS

Page

Introduction ....................................................................................................1

Background ....................................................................................................2

    A.    Native Hawaiians' quest to restore self-governance since the
overthrow of their government................................................................2

    B.    Act 195 and the establishment of the Native Hawaiian Roll
Commission to prepare a list of Native Hawaiians..............................4

    C.    Na'i Aupuni's election amongst Native Hawaiians............................7

    D.    Plaintiffs' complaint and motion for a preliminary injunction ............9

Argument......................................................................................................10

I.    Plaintiffs are not likely to succeed on the merits............................11

    A.    Plaintiffs are not likely to succeed on the merits of their claims
challenging the Roll Commission's certification of a roll of
Native Hawaiians ................................................................................12

        1.    Plaintiffs lack standing to challenge the Roll
Commission's preparation of a roll ..........................................13

        2.    The Roll Commission's preparation of a roll does not
abridge Plaintiffs' right to vote ................................................15

        3.    The Roll Commission's preparation of a roll does not
violate the First Amendment.....................................................17

    B.    Plaintiffs are not likely to succeed on the merits of their claims
challenging Na'i Aupuni's alleged use of the Roll to elect
delegates to a Native Hawaiian constitutional convention .................20

        1.    The Na'i Aupuni election is not a state election......................20

        2.    Na'i Aupuni is not a state actor.................................................24

            a.    The Na'i Aupuni election does not satisfy the
"public function" test....................................................25

            b.    The Na'i Aupuni election does not satisfy the
"joint action" test .........................................................26

II.    Plaintiffs are not likely to suffer irreparable harm absent a preliminary
injunction ..........................................................................................29

Table of contents—continued:

III.    The balance of equities does not favor a preliminary injunction .................32

IV.    The public interest is not served by a preliminary injunction ......................34

Conclusion ............................................................................................................36

# TABLE OF AUTHORITIES

## CASES

*Alliance for Wild Rockies* v. *Cottrell*, 632 F.3d 1127 (9th Cir. 2011)...............32, 34

*American Passage Media Corp.* v. *Cass Communications, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ...........................................................29

*Arakaki* v. *Hawaii*, 314 F.3d 1091 (9th Cir. 2002)............................................23, 24

*Arakaki v. Cayetano*, 299 F. Supp. 2d 1090 (D. Haw. 2002)...................................3

*Arizona Dream Act Coalition* v. *Brewer*, 757 F.3d 1053 (9th Cir. 2014) ..............30

*Bernhardt* v. *County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002)..................13, 34

*Blum* v. *Yaretsky*, 457 U.S. 991 (1982) ......................................................27

*Boy Scouts of America* v. *Dale*, 530 U.S. 640 (2000) ............................................33

*Buckley* v. *American Constitutional Law Foundation*, 525 U.S. 182 (1999)..........19

*Carroll* v. *Nakatani*, 342 F.3d 934 (9th Cir. 2003)............................................13, 14

*Caulfield* v. *Board of Education of City of New York*,
  583 F.2d 605 (2d Cir. 1978) ...........................................................16, 17

*Chrisom* v. *Roemer*, 501 U.S. 380 (1991) ...............................................21

*City of Detroit* v. *Franklin*, 4 F.3d 1367 (6th Cir. 1993).........................................15

*City of Los Angeles* v. *Lyons*, 461 U.S. 95 (1983)....................................................13

*Coalition for Economic Equity* v. *Wilson*,
  122 F.3d 718 (9th Cir. 1997) ...........................................................32

*Collins* v. *Hall*, 991 F. Supp. 1065 (N.D. Ind. 1997) ............................................14

*eBay, Inc.* v. *MercExchange, LLC*, 547 U.S. 388 (2006) .......................................30

Cases—continued:

*Excel Innovations, Inc., In re*, 502 F.3d 1086 (9th Cir. 2007).................................29

*Flagg Brothers, Inc.* v. *Brooks*, 436 U.S. 149 (1978)...............................................25

*Furumoto* v. *Lyman*, 362 F. Supp. 1267 (N.D. Cal. 1973) ....................................27

*Garcia* v. *Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc)...........................31

*Golden Gate Restaurant Association* v. *City & County of San Francisco*,
     512 F.3d 1112 (9th Cir. 2008) ...........................................................................34

*Goldie's Bookstore, Inc.* v. *Superior Court of California*,
     739 F.2d 466 (9th Cir. 1984) .............................................................................30

*Herb Reed Enterprises, LLC* v. *Florida Entertainment Management, Inc.*,
     736 F.3d 1239 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014) ..............29, 30

*Kahawaiolaa* v. *Norton*, 386 F.3d 1271 (9th Cir. 2004) ........................................21

*Kamaole Pointe Development LP* v. *County of Maui*,
     573 F. Supp. 2d 1354 (D. Haw. 2008).................................................................16

*Linda R.S.* v. *Richard D.*, 410 U.S. 614 (1973) ......................................................15

*Local Union 20* v. *United Brotherhood of Carpenters & Joiners of America*,
     223 F. Supp. 2d 491 (S.D.N.Y. 2002) .................................................................24

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................13

*Moose Lodge No. 107* v. *Irvis*, 407 U.S. 163 (1972)...............................................24

*Morales* v. *Daley*, 116 F. Supp. 2d 801 (S.D. Tex. 2000)................................16, 17

*Morton* v. *Mancari*, 417 U.S. 535 (1974)...........................................................2, 28

*NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886 (1982)....................................33

Cases—continued:

*Nordlinger* v. *Hahn*, 505 U.S. 1 (1992) ................................................16

*Northeastern Florida Chapter of Association of General Contractors of America* v. *City of Jacksonville*, 896 F.2d 1283 (11th Cir. 1990) ......................30

*Oakland Tribune, Inc.* v. *Chronicle Publishing Co.*, 762 F.2d 1374 (9th Cir. 1985) ..........................................................31

*Ohno* v. *Yasuma*, 723 F.3d 984 (9th Cir. 2013) ......................................24

*Preminger* v. *Principi*, 422 F.3d 815 (9th Cir. 2005) ...............................30

*Reed* v. *Spencer*, No. 90-1295, 1990 WL 72104 (E.D. La. May 25, 1990) ...........22

*Rendell-Baker* v. *Kohn*, 457 U.S. 830 (1982) .......................18, 25, 27, 28

*Rice* v. *Cayetano*, 528 U.S. 495 (2000) .......................................21, 23, 24

*Roberts* v. *United States Jaycees*, 468 U.S. 609 (1984) ..........................33

*San Francisco Arts & Athletics, Inc.* v. *United States Olympic Committee*, 483 U.S. 522 (1987)..............................................................27

*Santa Clara Pueblo* v. *Martinez*, 436 U.S. 49 (1978) ............................23

*Schowengerdt* v. *General Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987) ......................................................28

*Sever* v. *Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992)...................28

*Sharrow* v. *Brown*, 447 F.2d 94 (2d Cir. 1971) .......................................14

*Southwest Voter Registration Education Project* v. *Shelley*, 344 F.3d 914 (9th Cir. 2003) (en banc) ............................................33

*Stormans, Inc.* v. *Selecky*, 586 F.3d 1109 (9th Cir. 2009) ...............34, 35

*Sussman* v. *Tanoue*, 39 F. Supp. 2d 13 (D.D.C. 1999)............................17

*Swift* v. *Lewis*, 901 F.2d 730 (9th Cir. 1990) .........................................28

Cases—continued:

*Taylor* v. *Biglari*, 971 F. Supp. 2d 847 (S.D. Ind. 2013)........................................31

*Taylor-Failor* v. *County of Hawaii*, __ F. Supp. 3d __,
2015 WL 1142973 (D. Haw. Mar. 13, 2015) ..............................................10, 11

*Terry* v. *Adams*, 345 U.S. 461 (1953).........................................................21, 22, 24

*Tsao* v. *Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) ..................................26

*Warth* v. *Seldin*, 422 U.S. 490 (1975).....................................................................14

*Weinberger* v. *Romero-Barcelo*, 456 U.S. 305 (1982) ............................................33

*Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)...........29, 31

## CONSTITUTION AND STATUTES

U.S. Const. Amend. I ......................................................................................*passim*

U.S. Const. Amend. XIV .................................................................................*passim*

U.S. Const. Amend. XV...................................................................................*passim*

Act to Provide for the Admission of the State of Hawaii into the Union,
Pub. L. No. 86-3, 73 Stat. 4 (1959).......................................................................3

Joint Resolution to Provide for Annexing the Hawaiian Islands to the United
States, Pub. Res. 55-51, 30 Stat. 750 (1898) .......................................................3

Joint Resolution to Acknowledge 100th Anniversary of the January 17, 1893,
Overthrow of Kingdom of Hawaii, Pub. L. 103-150, 107 Stat. 1510 (1993) ......4

Voting Rights Act, Pub. L. 89-110, 79 Stat. 437 (1965) ................................*passim*

20 U.S.C. §§ 7511-7517 .........................................................................................3

42 U.S.C. §§ 2991-2992 .........................................................................................3

42 U.S.C. §§ 11701-11714 .....................................................................................3

2011 Haw. Sess. Laws Act 195 (S.B. 1520), *codified at* Haw. Rev. Stat. § 10H .....4

Statutes—continued:

Haw. Rev. Stat. § 10H-2 ...........................................................35

Haw. Rev. Stat. § 10H-3 ....................................................5, 6, 14

Haw. Rev. Stat. § 10H-5 .......................................................7, 35

## MISCELLANEOUS

Department of the Interior & Department of Justice, *From Mauka to Makai: The River of Justice Must Flow Freely* 4 (2000) ...................................4

Department of the Interior, *Procedures for Re-establishing a Formal Government-to-Government Relationship with the Native Hawaiian Community* <www.doi.gov/ohr/hawaiian-govt-to-govt-procedures-proposed-rule> (Sept. 29, 2015) .......................................................................4, 12

Kanaʻiolowalu, *Certified List* <www.kanaiolowalu.org/list> (last visited Sept. 30, 2015) .......................................................6

Kanaʻiolowalu, *Enroll and Register at Kanaʻiolowalu* <www.kanaiolowalu.org/registernow> (last visited Sept. 30, 2015) ..................6

Naʻi Aupuni, *FAQ* <www.naiaupuni.org/faq.html#faq2> (last visited Sept. 30, 2015) .......................................................8

Native Hawaiian Roll Commission Removal Request Form <kanaiolowalu.org/downloads/RemovalRequestForm.pdf> (last visited Sept. 30, 2015) .......................................................................8

# INTRODUCTION

Plaintiffs fail to satisfy any of the requirements for the extraordinary relief they seek. First and foremost, Plaintiffs cannot demonstrate a likelihood of success on the merits of their constitutional and statutory challenges. As a threshold matter, Plaintiffs' claims stem from the deeply flawed premise that the *State*, through Act 195, is conducting the election at issue here. Plaintiffs cannot point to any actual language in Act 195 that supports that argument, because it does not exist. Plaintiffs' repeated contention that the "Act" provides for State voter registration and election activities is thus misleading, because it conflates the limited activities of the State with those of a private organization, Naʻi Aupuni.

Under Act 195, the State's activities are limited to the creation of an entity called the Native Hawaiian Roll Commission, whose *sole* responsibility is to prepare and certify a "Roll" of qualified Native Hawaiians. This "Roll" is simply a list of qualified Native Hawaiians. It is not a list of individuals eligible to vote in any state election, nor does Act 195 provide for any such election. There is nothing unlawful about the government simply compiling a list of individuals of a certain ancestry.

Naʻi Aupuni, *not* the State, is the entity conducting the election of delegates for a Native Hawaiian convention. That election is not mandated or regulated by the State; it is a private election, akin to an election among shareholders of a corporation or members of an advocacy organization. No state official will be elected as a result of the election, nor will the convention decide any matter of state law. Ac-

cordingly, there is no constitutional or statutory constraint on Naʻi Aupuni's right to decide who is a qualified voter or delegate. And, while OHA fully joins in the State's analysis under *Morton* v. *Mancari*, 417 U.S. 535, 555 (1974), Plaintiffs' claims fail because they lack standing and due to the absence of state action before the Court ever needs to reach that issue.

Plaintiffs likewise fail to satisfy their burden of proof with respect to the other requirements for a preliminary injunction. In particular, Plaintiffs have not shown either that the balance of the equities tips sharply in their favor or that the public interest will be served by a preliminary injunction. Plaintiffs' own conduct speaks volumes: they delayed filing their complaint for over four years after Act 195 was passed, and their claims to harm are premised on a distortion of fact and law. On the other side of the scales, Plaintiffs' requested relief would prevent Native Hawaiians from organizing to discuss their rights to self-governance, an outcome that raises serious First Amendment concerns. Because Plaintiffs fail to satisfy any of the requirements for a preliminary injunction, their motion should be denied.

## BACKGROUND

### A. Native Hawaiians' Quest To Restore Self-Governance Since The Overthrow Of Their Government

Native Hawaiians are the descendants of the indigenous people who settled the Hawaiian Islands and founded the sovereign Hawaiian nation. In 1893, a group of non-Hawaiians, aided by the United States military, overthrew the Hawaiian

2

Kingdom. *See* 107 Stat. 1510 (1993). In 1898, the United States annexed Hawai'i and required Hawai'i to cede all former Crown, government, and public lands to the United States. *See* 30 Stat. 750.

When Hawai'i was admitted to the Union in 1959, the United States reaffirmed the special status of Native Hawaiians by (1) conferring on the State a portion of the federal government's trust responsibility to Native Hawaiians under the Hawaiian Homes Commission Act of 1920 and (2) requiring the State to administer in trust another 1.2 million acres of the lands ceded to the United States for purposes that included "the betterment of the conditions" of Native Hawaiians. *See* 73 Stat. 4 (1959). In 1978, the Hawai'i State Constitution established the Office of Hawaiian Affairs (OHA) in order to manage revenue from those lands and to serve as an advocate for Native Hawaiians.[1]

Congress has continuously reaffirmed the special status of Native Hawaiians by enacting over 150 statutes that provide benefits to Native Hawaiians. *See*, *e.g.*, 42 U.S.C. §§ 11701-11714; 20 U.S.C. §§ 7511-7517; 42 U.S.C. §§ 2991-2992. And in 1993, Congress enacted a joint resolution apologizing to Native Hawaiians for the United States' participation in the overthrow of the Hawaiian Kingdom and

---

[1] Native Hawaiians' portion of the trust revenue is not state money; it is intended solely for OHA's Native Hawaiian beneficiaries. *See* Crabbe Decl. ¶ 8. As Judge Mollway has observed, the trust funds merely "pass-through" the State to OHA. *See Arakaki* v. *Cayetano*, 299 F. Supp. 2d 1090, 1100 (D. Haw. 2002).

331297.3

commending "efforts of reconciliation initiated by the State of Hawaiʻi." *See* 107 Stat. 1513.

Under the myriad federal and state laws acknowledging their special status, Native Hawaiians exercise many practical aspects of self-governance. Native Hawaiians, however, currently lack a formal self-governing entity. For more than two decades, the federal and state governments have supported Native Hawaiians' efforts to create such an entity. In particular, in 1999, the federal government issued a report recommending that "the Native Hawaiian people should have self-determination over their own affairs." Department of the Interior & Department of Justice, *From Mauka to Makai: The River of Justice Must Flow Freely* 4 (2000). Capping off that effort, the Department of the Interior recently proposed a rule for reestablishing a formal government-to-government relationship with the United States if Native Hawaiians seek such a relationship. *See* Department of the Interior, *Procedures for Re-establishing a Formal Government-to-Government Relationship with the Native Hawaiian Community* 1 ("Proposed Rule") <www.doi.gov/ohr/hawaiian-govt-to-govt-procedures-proposed-rule> (Sept. 29, 2015).

**B.  Act 195 And The Establishment Of The Native Hawaiian Roll Commission To Prepare A List Of Native Hawaiians**

The instant case arises in the wake of Act 195, a bill enacted by the State of Hawaiʻi on July 6, 2011. 2011 Haw. Sess. Laws Act 195 (S.B. 1520), *codified at* Haw. Rev. Stat. § 10H. Act 195 established a Native Hawaiian Roll Commission,

4

whose members are appointed by the governor.  Haw. Rev. Stat. § 10H-3(b).  The
Roll Commission's sole responsibility is to "[p]repar[e] and maintain[] a roll of
qualified Native Hawaiians" and to "[c]ertify[] that the individuals on the
roll  .  .  .  meet the definition of qualified Native Hawaiians."  Haw. Rev. Stat.
§ 10H-3(a).

As amended, Act 195 defines "qualified Native Hawaiians" as individuals
who satisfy three criteria:  (1) the individual must be "a descendant of the aborigi-
nal peoples who, prior to 1778, occupied and exercised sovereignty in the Hawai-
ian islands," is "one of the indigenous, native people of Hawai'i and who was eli-
gible in 1921 for the programs authorized by the Hawaiian Homes Commission
Act, 1920, or a direct lineal descendant of that individual," or "meets the ancestry
requirements of Kamehameha Schools or of any Hawaiian registry program of
[OHA]"; (2) the individual must have "maintained a significant cultural, social, or
civic connection to the Native Hawaiian community and wishes to participate in
the organization of the Native Hawaiian governing entity"; and (3) the individual
must be "eighteen years of age or older."  Haw. Rev. Stat. § 10H-3(a)(2).

The Roll Commission began accepting registrations in July 2012.  Compl.
¶ 34.  Individuals may register online or by paper application.  State Br., Namu'o
Decl. ¶ 3.  The registration form indicates that, by submitting the form, individuals
make three declarations:  (1) that the individual "affirm[s] the unrelinquished sov-
ereignty of the Native Hawaiian people, and [his or her] intent to participate in the

process of self-governance;" (2) that the individual "ha[s] a significant cultural, social or civic connection to the Native Hawaiian community;" and (3) that the individual is "a Native Hawaiian:  a lineal descendant of the people who lived and exercised sovereignty in the Hawaiian islands prior to 1778, or a person who is eligible for the programs of the Hawaiian Homes Commission Act, 1920, or a direct lineal descendant of that person."  Compl. ¶ 42; *see* Kanaʻiolowalu, *Enroll and Register at Kanaʻiolowalu* <www.kanaiolowalu.org/registernow> (last visited Sept. 30, 2015).  The Roll Commission accepts registrations from individuals who satisfy the criteria of Act 195 but decline to affirm the unrelinquished sovereignty of the Native Hawaiian people.  Namuʻo Decl. ¶ 23.  The current version of the list is available online and is regularly updated by the Commission.  *See* Kanaʻiolowalu, *Certified List* <www.kanaiolowalu.org/list> (last visited Sept. 30, 2015).

Pursuant to an amendment to Act 195, the Roll Commission also "precertified" for the Roll individuals who are listed on a registry of Native Hawaiians maintained by OHA.  Haw. Rev. Stat. § 10H-3(a)(2)(A)(iii); Namuʻo Decl. ¶ 11.  The individuals on OHA's registry meet ancestry requirements of Act 195, but do not have to make any declarations in order to be listed.  Haw. Rev. Stat. § 10H-3(a)(4); Crabbe Decl. ¶¶ 9-10.  On numerous occasions, the Roll Commission and OHA informed individuals who were precertified that they had the right to opt out of being registered.  Namuʻo Decl. ¶ 5; Crabbe Decl. ¶¶ 12-16.  In fact, individuals

who wish to be removed from the Roll for any reason may do so by filling out a short form that is available on the Roll Commission's website. Namuʻo Decl. ¶ 8; Native Hawaiian Roll Commission Removal Request Form <kanaiolowalu.org/downloads/RemovalRequestForm.pdf> (last visited Sept. 30, 2015).

Critically, the Roll is *not* a list of voters eligible to vote in any state election. Rather, the Roll is simply a list of qualified Native Hawaiians. Act 195 does not mandate or otherwise provide that any election shall be conducted among the individuals on the Roll. Instead, it confirms that the Roll is merely "intended to facilitate the process under which qualified Native Hawaiians may *independently* commence the organization of a convention of qualified Native Hawaiians, established for the purpose of organizing themselves." Haw. Rev. Stat. § 10H-5 (emphasis added).

## C. Naʻi Aupuni's Election Amongst Native Hawaiians

Naʻi Aupuni is a nonprofit corporation that supports efforts to achieve Native Hawaiian self-determination. Naʻi Aupuni Br., Asam Decl. ¶ 6. Naʻi Aupuni requested and received a grant of trust funds from OHA with which it intends to facilitate an election of delegates for a Native Hawaiian constitutional convention. Asam Decl. ¶ 14. (OHA actually provided the funds to the Akamai Foundation, a tax-exempt nonprofit corporation, for use by Naʻi Aupuni. Asam Decl. ¶ 15.) The grant agreement explicitly provides that Naʻi Aupuni "will not be directly or indirectly controlled or affected by OHA" and that Naʻi Aupuni "has no obligation to

7

consult with OHA" regarding any of its decisions. Asam Decl. ¶ 14; Grant Agreement ¶ 3 (Dkt. No. 47-13). Consistent with the agreement, the decisions Naʻi Aupuni has made with respect to the planned election have not been controlled by the State, the Roll Commission, or OHA. Asam Decl. ¶¶ 13, 18-19, 25, 28.

To determine who is eligible to vote in the election, Naʻi Aupuni determined that the best option was to use the list of individuals being prepared by the Roll Commission. Asam Decl. ¶ 18. To be a candidate for delegate, Naʻi Aupuni requires that an individual be on the Roll. Compl. ¶¶ 109-110. Regardless of whether the Roll Commission has certified a *final* Roll, however, Naʻi Aupuni intends to proceed with its scheduled election in November 2015. Asam Decl. ¶ 32. Individuals that the Roll Commission has certified as of October 15, 2015, will be eligible to vote. *Id.* ¶ 25. Naʻi Aupuni has made clear that the individuals who do not wish to make the Roll Commission's first declaration can still participate in the election. *Id.* ¶ 19; Naʻi Aupuni, *FAQ* <www.naiaupuni.org/faq.html#faq2> (last visited Sept. 30, 2015).

Once the election has occurred, Naʻi Aupuni intends to support a convention at which the delegates "will come together to decide whether or not to create a document or constitution" for a Native Hawaiian self-governing entity. Naʻi Aupuni, *FAQ*, *supra*. If the delegates decide to create a constitution, Naʻi Aupuni intends to conduct a referendum on whether the constitution should be ratified.

Asam Decl. ¶ 32. Notably, even if such a constitution is ratified, the resulting Native Hawaiian self-governing entity would have no official legal status unless it were otherwise recognized by the state or federal government.

**D.    Plaintiffs' Complaint And Motion For A Preliminary Injunction**

On August 13, 2015—over four years after the passage of Act 195—Plaintiffs filed the instant complaint.  Plaintiffs are six individuals who allege that (1) they have been prevented from registering for the Roll either because they are not Native Hawaiians or because they will not affirm the declarations on the Roll Commission's online form; or (2) they have been registered for the Roll without their knowledge or consent (presumably because they were precertified for the Roll due to their inclusion on OHA's registry).  Compl. ¶¶ 6-11.  Oddly, the two Plaintiffs in the latter category, Plaintiffs Gapero and Moniz, do not allege that they have requested removal from the Roll, even though the Roll Commission permits individuals to opt out of the Roll for any reason.  *See* pp. 6-7, *supra*.

Without differentiating among Defendants, the Complaint alleges nine counts, which fall into two primary categories.  *First*, the Complaint alleges that Defendants have denied Plaintiffs the right to vote or otherwise unduly burdened the right to vote, in violation of the Fourteenth and Fifteenth Amendments of the Constitution and the Voting Rights Act (Counts 1-3 and 7-8).  In a related vein, the Complaint alleges that Defendants have unlawfully restricted candidates for delegates in Naʻi Aupuni's election to Native Hawaiians, in violation of the Fifteenth

Amendment and the Voting Rights Act (Counts 5 and 6).  *Second*, the Complaint

alleges that the declarations on the Roll Commission's online form discriminate on

the basis of viewpoint and that Defendants have compelled speech by precertifying

Gapero and Moniz for the Roll, in violation of the First Amendment (Counts 4 and

9).

The Complaint requests various forms of injunctive and declaratory relief.

As is relevant here, the Complaint requests preliminary injunctions prohibiting

"defendants from requiring prospective applicants for any voter roll to confirm

Declaration One, Declaration Two, or Declaration Three, or to verify their ances-

try," and from using "the Roll that has been developed using these procedures, and

the calling, holding, or certifying of any election utilizing the Roll."  Compl. 32.

Shortly after filing the Complaint, Plaintiffs filed the instant motion for a prelimi-

nary injunction, requesting an order "preventing Defendant's from undertaking

certain voter registration activities and from calling or holding racially-exclusive

elections for Native Hawaiians, as explained in Plaintiffs' Complaint."  Doc. 47

p. 3.

## ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy, one that

should not be granted unless the movant, by a clear showing, carries the burden of

persuasion."  *Taylor-Failor* v. *County of Hawaii*, __ F. Supp. 3d __, 2015 WL

1142973, at *2 (D. Haw. Mar. 13, 2015) (internal quotation marks and citation

omitted).  A plaintiff seeking a preliminary injunction must show "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id.*  While "a stronger showing of one element may offset a weaker showing of another," "the movant always has the burden of proof on each element of the test." *Id.* (internal quotation marks and citation omitted).  In this case, Plaintiffs satisfy none of the four requirements for a preliminary injunction, and their motion should accordingly be denied.

## I.      PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

Plaintiffs cannot demonstrate that they are likely to succeed on the merits of their claims, as is required for a preliminary injunction to issue.  Plaintiffs effectively seek two discrete forms of relief:  (1) an order prohibiting the Roll Commission from requiring individuals to confirm any of the declarations or to verify their ancestry in order to register for its Roll, and (2) an order that would prohibit Naʻi Aupuni from conducting a private election.  Compl. 32.  Under Act 195, however, the Roll Commission's activities are limited essentially to list-making and thus do not violate the Constitution.  Naʻi Aupuni—the entity that intends to hold an election—is not a state actor and thus cannot violate any of the constitutional or statutory provisions invoked by Plaintiffs.[2]

---

[2] Notably the Department of the Interior's proposed rule for reestablishing a government-to-government relationship with Native Hawaiians relies on the exist-

**A. Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims Challenging The Roll Commission's Certification Of A Roll Of Native Hawaiians**

To begin with, Plaintiffs are not likely to succeed on any of their claims relating to the Roll Commission's certification of a Roll of qualified Native Hawaiians, which is the only state action that Plaintiffs identify. Plaintiffs challenge the Roll on two principal grounds: (1) that the certification of the Roll would unlawfully abridge or otherwise unduly burden their right to vote (Counts 1-3 and 7-8), and (2) that the creation of the Roll violates the First Amendment by requiring viewpoint-based declarations and by precertifying Plaintiffs Gapero and Moniz for the Roll (Counts 4 and 9).

Plaintiffs' claims relating to the Roll fail because the establishment of a Roll causes Plaintiffs no injury in fact and they thus do not have standing. Moreover, Plaintiffs cannot show on the merits that the preparation of the Roll unlawfully abridges their right to vote, because the Roll is simply a list. Further, Plaintiffs' First Amendment argument relies on erroneous factual premises, both because the Roll Commission does not require individuals to hold a certain viewpoint in order

---

ence of a state-prepared roll and an election limited to members of a Native Hawaiian community—the very processes Plaintiffs seek to enjoin. By endorsing those processes, the Department implies its view that the Roll and such an election are constitutional and in the public interest. *See* Proposed Rule, *supra*, at 64, 67 (contemplating state-certified roll followed by a vote limited to Native Hawaiians); *id.* at 30 (specifically noting that the use of the Act 195 Roll "may facilitate the reestablishment of a formal government-to-government relationship").

to be listed on the Roll and because it allows individuals who do not wish to be on the Roll to be removed. Whether one characterizes the resulting defect as a lack of standing or a problem with the merits of their argument, Plaintiffs cannot show that they are likely to prevail on their claims to the extent that those claims challenge their inclusion on or exclusion from the Roll.

### 1. *Plaintiffs Lack Standing To Challenge The Roll Commission's Preparation Of A Roll*

As an initial matter, Plaintiffs lack standing to pursue Counts 1-4 and 7-9 to the extent that those counts challenge the Roll Commission's preparation of a Roll. The plaintiff bears the burden of establishing standing. *See Carroll* v. *Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). In order to meet the "irreducible constitutional minimum of standing," *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992), a plaintiff must show that:

> (1) [he or she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bernhardt* v. *County of Los Angeles*, 279 F.3d 862, 868-869 (9th Cir. 2002). A plaintiff seeking an injunction must further show that he or she "has sustained or is immediately in danger of sustaining some *direct injury* as the result of the challenged official conduct." *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983) (emphasis added) (internal quotation marks and citation omitted). A plaintiff must present "specific, concrete facts" showing that the challenged conduct will result in

a "demonstrable, particularized injury" to the plaintiff so that he or she "personally would benefit in a tangible way" from court action. *See Warth* v. *Seldin*, 422 U.S. 490, 508 (1975).

Plaintiffs have entirely failed to make the requisite showing of injury. The Roll is nothing more than a list of Native Hawaiians. At most, Act 195 creates a process for a classification without awarding or denying any benefits based on that classification. *See* Haw. Rev. Stat. § 10H-3. The Ninth Circuit has previously held that a plaintiff lacks standing to challenge the mere fact of a classification itself. *See Carroll*, 342 F.3d at 946. For example, a list prepared by the government that categorizes individuals on the basis of race (such as the census) creates no distinct and palpable injury. *See Sharrow* v. *Brown*, 447 F.2d 94, 96 (2d Cir. 1971) (holding that, in order to challenge operation of the census, a plaintiff "must show at least a substantial likelihood that the relief which he seeks will result in some benefit to himself"). Similarly, because the Roll does not affect anyone's legal rights, Plaintiffs have failed to show a particularized injury from their exclusion from or inclusion on the Roll. *See Collins* v. *Hall*, 991 F. Supp. 1065, 1073 (N.D. Ind. 1997) (holding that a plaintiff lacks standing to challenge her mere placement on a list of habitual drunkards).[3]

---

[3] For their two First Amendment claims (Counts 4 and 9), Plaintiffs lack standing because the challenged declarations are not required and Plaintiffs can be removed from the list any time.

331297.3

Nor can Plaintiffs claim standing based on the fact that Naʻi Aupuni—a non-state actor—chose, independently of any Act 195 requirement, to use the Roll as a resource to decide who is eligible to vote in its private election. *See City of Detroit* v. *Franklin*, 4 F.3d 1367, 1373 (6th Cir. 1993) (holding that third party's decision to use census data in the absence of a legal requirement to do so was an "independent act breaking the chain of causation"). Act 195 does not require that anyone use the Roll. Indeed, Naʻi Aupuni's stated position is that it intends to use a list of names from the October 15, 2015, version of the Roll for its election, regardless of whether the Roll Commission has certified the final version of the Roll by that date. *See* p. 8, *supra*. Further, Naʻi Aupuni has complete discretion to include individuals who are *not* on the Roll in its election, and has decided, in its "sole discretion" to limit its election to Native Hawaiians. Asam Decl. ¶ 13. Plaintiffs have thus failed to establish either the requisite causal link, or that, if the use of the Roll were enjoined, Naʻi Aupuni's election would include Plaintiffs in particular. *See Linda R.S.* v. *Richard D.*, 410 U.S. 614, 618 (1973) (holding that a plaintiff lacked standing because it was speculative that the requested relief would redress the alleged injury). As a result, Plaintiffs lack standing to challenge the Roll—and are thus unlikely even to reach, much less succeed on, the merits of their claims.

### 2. The Roll Commission's Preparation Of A Roll Does Not Abridge Plaintiffs' Right To Vote

Plaintiffs' primary argument in support of their request that the Court enjoin the Roll Commission's certification of a Roll is that the certification of the Roll

would abridge their right to vote on the basis of race or otherwise unduly burden their right to vote, in violation of the Fourteenth and Fifteenth Amendments and the Voting Rights Act (Counts 1-3 and 7-8). Plaintiffs' claims on this point rest on the faulty assumption that the Roll Commission, *or some other state agency*, will conduct an election in which only individuals on the Roll may vote. *See, e.g.*, Doc. 47-1 p. 9-11, 15, 20-21. Contrary to Plaintiffs' contention, however, Act 195 does not provide for any election, public or private, and neither the Roll Commission nor any other state agency plans to conduct an election based on an electorate derived from the Roll. *See* p. 7, *supra*.

As to the activity in which the Roll Commission *is* currently engaging—the preparation of the Roll—there is nothing unlawful about it. That is true even where, as here, the list includes only individuals of a certain ancestry. Simply put, "[t]he Equal Protection Clause does not forbid classifications," but rather "keeps governmental decisionmakers from *treating* differently persons who are in all relevant respects alike." *Nordlinger* v. *Hahn*, 505 U.S. 1, 10 (1992) (emphasis added); *accord Kamaole Pointe Development LP* v. *County of Maui*, 573 F. Supp. 2d 1354, 1374 (D. Haw. 2008).

For that reason, courts have consistently rejected claims challenging governmental collection of data, even data relating to race or ancestry. *See, e.g., Caulfield* v. *Board of Education of City of New York*, 583 F.2d 605, 606, 611-612 (2d Cir. 1978); *Morales* v. *Daley*, 116 F. Supp. 2d 801, 809-815 (S.D. Tex. 2000);

*Sussman* v. *Tanoue*, 39 F. Supp. 2d 13, 25 (D.D.C. 1999). Indeed, "the Supreme Court and lesser courts have accepted, without question, the propriety of collecting . . . data on race and ethnicity." *Morales*, 116 F. Supp. 2d at 814. That is so because arguments opposing the collection of such data are "based upon a misunderstanding of the distinction between *collecting* demographic data" and "governmental *use* of suspect classifications without a compelling interest." *Id.* (emphases added).[4] Here, the Roll is simply a list of qualified Native Hawaiians. Plaintiffs do not—because they cannot—show that the State intends to use the Roll in order to treat individuals differently on the basis of their ancestry. Accordingly, Plaintiffs cannot show a likelihood of success as to their challenge to the Roll based on Counts 1-3 and 7-8.

### 3. The Roll Commission's Preparation Of A Roll Does Not Violate The First Amendment

Plaintiffs argue that the Roll violates their First Amendment rights for two reasons: (1) because the declarations on the Roll Commission's online form discriminate on the basis of viewpoint (Count 4), and (2) because the Roll Commis-

---

[4] The collection of statistical information is frequently intended to benefit racial or ethnic minorities. *See Caulfield*, 583 F.2d at 611. But "[c]ourts have consistently declined to apply strict scrutiny to outreach efforts to minorities which do not accompany actual preferences." *Sussman*, 39 F. Supp. 2d at 25-26 (collecting cases).

sion's precertification of certain plaintiffs who do not agree with the declarations constitutes compelled speech (Count 9). Those arguments lack merit.

Plaintiffs' challenge to the declarations is flawed for multiple reasons. To begin with, Plaintiffs are simply wrong as a matter of fact when they assert that they must make those declarations in order to be included on the Roll. As explained more fully above, *see* p. 6, *supra*, the Roll Commission accepts registrations from Native Hawaiians who decline to make a declaration concerning sovereignty. Namuʻo Decl. ¶ 23. Additionally, individuals may be included on the Roll by registering for OHA's registry, which does not require any declarations at all. *See* p. 6, *supra*. Accordingly, all Native Hawaiians over the age of 18, regardless of viewpoint, are able to register for the Roll.

In any event, even if Plaintiffs were correct that they have been excluded from the Roll on the basis of their viewpoint, their claim would still fail for the simple reason that there is no protected constitutional interest in being included on a list. *See* pp. 16-17, *supra*. As they themselves put it, Plaintiffs' real grievance is that "[n]ot being on the Roll will deny them the right to participate in the registration/election/convention process under Act 195." Doc. 47-1 p. 19. As discussed above, however, that process is not happening "under Act 195"; it is being conducted by Naʻi Aupuni, a private entity. *See* pp. 7-9, *supra*. In addition, exclusion from the Roll does not infringe any fundamental right, as Plaintiffs incorrectly assert, Doc. 47-1 p. 18, because it does not affect the right to vote in a *federal or*

*state election.  See* pp. 7-9, *supra.*  The First Amendment simply does not apply to the private activity and election that is contemplated here.  *See Rendell-Baker* v. *Kohn*, 457 U.S. 830, 837-838 (1982).  Indeed, if Plaintiffs were correct that the First Amendment applied to internal elections conducted by a nonprofit or interest group, organizations such as the NAACP or NRA could be required to have individuals who did not agree with their missions vote in elections for their officers. That is certainly not the law.

Plaintiffs' challenge to the precertification process similarly fails.  As an initial matter, Plaintiffs are once again simply wrong on the facts, because anyone listed on the Roll may opt out for any reason.  *See* pp. 6-7, *supra.*  In 2013, the Plaintiffs who assert this challenge, Gapero and Moniz, were expressly notified that the transfer of names to the Roll would occur and that they could opt out of the transfer.  Crabbe Decl. ¶¶ 12-14.  In addition, after this lawsuit was filed they were contacted again through counsel and told how they can remove themselves from the Roll.  Namuʻo Decl. ¶ 19.  There is therefore no cognizable claim of compelled speech, even if mere inclusion on a list of this sort properly could be characterized as speech in the first place.

Additionally, this challenge fails as a legal matter.  Plaintiffs base their argument on *Buckley* v. *American Constitutional Law Foundation*, 525 U.S. 182 (1999), and other cases holding that there is a First Amendment right not to vote or to register to vote.  *See* Doc. 47-1 p. 22-23.  But Plaintiffs' argument again incor-

19

rectly assumes that inclusion on the Roll is the same as being registered to vote in a federal or state election. Since the Roll is simply a list of individuals and the only election at issue here is private, inclusion on the Roll does not infringe any right not to register to vote. Accordingly, Plaintiffs cannot show a likelihood of success as to their challenge to the Roll based on Counts 4 and 9.[5]

**B.** **Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims Challenging Naʻi Aupuni's Alleged Use Of The Roll To Elect Delegates To A Native Hawaiian Constitutional Convention**

Plaintiffs are likewise not likely to succeed on any of their claims relating to Naʻi Aupuni's planned election amongst Native Hawaiians. Plaintiffs challenge the election on two principal grounds: (1) that the election violates the Fourteenth Amendment, Fifteenth Amendment, and the Voting Rights Act by limiting the electorate to individuals listed on the Roll (Counts 1-3 and 7-8), and (2) that the election violates the Fifteenth Amendment and the Voting Rights Act by limiting candidates for delegates to Native Hawaiians (Counts 5-6). Both of those challenges hinge on the flawed premises that the Naʻi Aupuni election is a state election and that Naʻi Aupuni is a state actor. *See* Doc. 47-1 p. 23-26.

*1.* *The Naʻi Aupuni Election Is Not A State Election*

To begin with, the vote Naʻi Aupuni intends to conduct is not a state election—no state official will be elected, nor will any issue of state law or policy be

---

[5] If the Court were to find any merit to Count 9, the proper remedy would be to remove Gapero and Moniz, not to enjoin the entire Roll and election process.

decided.  Plaintiffs cite no authority supporting their bald assertions that restrictions on the electorate or candidates in such an election implicate the Fifteenth Amendments or the Voting Rights Act.  To the contrary, it is clear that they do not.  The Fifteenth Amendment precludes "discriminat[ion] against . . . voters in elections to determine public governmental policies or to select public officials, national, state, or local."  *Terry* v. *Adams*, 345 U.S. 461, 467 (1953).  Similarly, the Voting Rights Act applies only to "votes cast with respect to candidates for public or party office."  *Chrisom* v. *Roemer*, 501 U.S. 380, 391 (1991).

As to Naʻi Aupuni's limitation of the electorate to individuals listed on the Roll, Plaintiffs cite *Rice* v. *Cayetano*, 528 U.S. 495 (2000), but that case simply is not on point.  In *Rice*, the Supreme Court held that, under the Fifteenth Amendment, the State of Hawaiʻi could not limit elections for trustees of OHA to Native Hawaiian voters.  *See* 528 U.S. at 509.  The fact that the elections at issue were for state officials was crucial to the Court's decision.  As the Court noted, "[t]he OHA elections . . . are the affair of the State of Hawaiʻi," and "OHA is a state agency, established by the State Constitution, responsible for the administration of state laws and obligations."  *Id.* at 520.  The Court explained that "[a]ll citizens, regardless of race, have an interest in selecting officials who make policies on their behalf."  *Id.* at 523; *see also Kahawaiolaa* v. *Norton*, 386 F.3d 1271, 1279 (9th Cir. 2004) (noting that "*Rice* concerned elections of the State of Hawaiʻi to which the Fifteenth Amendment applied").

21

The facts in this case are distinguishable from *Rice* in precisely that respect: the proposed election here is not for public officials, but rather for delegates to a private convention of Native Hawaiians, who may thereafter interact with the State however they choose. The proposed election is separate and independent of any state election. Further, neither Naʻi Aupuni nor the Native Hawaiian convention itself is a state agency: neither is established by the State Constitution or state law, and neither is responsible for the administration of state laws and obligations. Any suggestion that the election here could "determine public governmental policies" or "select public officials" is belied by the fact that the purpose of the election is to further the process of creating a distinct Native Hawaiian political entity *separate from* the state government.[6] Neither the Fifteenth Amendment nor the Voting Rights Act places a constraint on such proceedings. *See Reed* v. *Spencer*, No. 90-1295, 1990 WL 72104, at *2 (E.D. La. May 25, 1990) (dismissing Fifteenth Amendment and Voting Rights Act challenges to elections for Orleans Parish Democratic Executive Committee because "this Committee is not comprised of public officials").[7]

---

[6] Further demonstrating that the vote is not an election for a Hawaiian state office, Naʻi Aupuni is allowing Native Hawaiians who do not live in Hawaiʻi to vote. *See* Asam Decl. ¶ 25.

[7] Contrary to Plaintiffs' suggestion, Doc. 47-1 p. 25, 28, this case does not resemble *Terry*, *supra*. There, the Supreme Court concluded that an all-white primary election held by the Jaybird Democrats in Texas violated the Fifteenth Amendment. The Court's application of the Fifteenth Amendment to that ostensibly "pri-

Not only is the election here not one for public officials; it is exactly the kind of election that *Rice* recognized could permissibly be exclusionary. *See Rice*, 528 U.S. at 520 (noting that, "[i]f a non-Indian lacks a right to vote in tribal elections, it is for the reason that such elections are the internal affair of a quasi sovereign"). The elections here are the internal affairs of the Native Hawaiian quasi-sovereign body politic, in which non-Native Hawaiians have no right to participate. *See id.* (distinguishing OHA trustee election from Menominee Restoration Act and Indian Reorganization Act, which involve elections limited to tribe members as part of tribal organizational efforts); *cf. Santa Clara Pueblo* v. *Martinez*, 436 U.S. 49, 72 n.32 (1978) (noting that "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community").

Plaintiffs' similar arguments concerning Na'i Aupuni's restriction of candidates to qualified Native Hawaiians fail for much the same reasons. Plaintiffs rely on *Arakaki* v. *Hawaii*, 314 F.3d 1091 (9th Cir. 2002), but that case dealt with restrictions on who could run as candidates to be trustees of OHA. The Ninth Circuit's decision that such restrictions ran afoul of the Fifteenth Amendment and the

---

vate" group was based on the fact that "[t]he Jaybird primary has become an integral part, indeed the only effective part, of the elective process that determines *who shall rule and govern in the county.*" *Terry*, 345 U.S. at 469 (emphasis added). *Terry* is thus entirely consistent with the proposition that the Fifteenth Amendment applies to only elections that select state officials.

Voting Rights Act was based on *Rice*'s conclusions that OHA "is an 'arm of the State' " and that "the Fifteenth Amendment applies to elections for OHA trustees, which are 'elections of the State.' " *Id.* at 1095. Again, the election here is not for the purpose of "selecting officials who make policies on [Plaintiffs'] behalf," *id.* at 1095 (internal quotation marks omitted). Like *Rice*, *Arakaki* is therefore inapposite.[8]

### 2. Na'i Aupuni Is Not A State Actor

Separately, Plaintiffs' claims regarding the election fail because Na'i Aupuni is not a state actor—and the Fourteenth and Fifteenth Amendments and the Voting Rights Act apply only to state action. *See* U.S. Const. Amends. XIV and XV; *Moose Lodge No. 107* v. *Irvis*, 407 U.S. 163, 172 (1972); *Terry*, 345 U.S. at 473-477 (Frankfurter, J. concurring); *Local Union 20* v. *United Brotherhood of Carpenters & Joiners of America*, 223 F. Supp. 2d 491, 501 (S.D.N.Y. 2002). In arguing to the contrary, Plaintiffs rely on two theories of state action, the "public function" test and the "joint action" test. *See* Doc. 47-1 p. 23-26.[9] Under either test, however, the contemplated Na'i Aupuni election does not qualify as state action.

---

[8] Plaintiffs' arguments concerning eligible candidates also fail because, as discussed below, Na'i Aupuni is not a state actor, and its restrictions on candidates therefore cannot violate the Constitution or the Voting Rights Act. *See* pp. 24-28, *infra*.

[9] As Plaintiffs concede, the other two tests articulated by the Ninth Circuit for state action, the "state compulsion" and the "governmental nexus" tests, are "large-

*a.* *The Naʻi Aupuni Election Does Not Satisfy The "Public Function" Test*

Plaintiffs argue that Naʻi Aupuni is essentially acting as a government contractor with respect to its plans for an election and convention, thereby purportedly satisfying the "public function" test for state action. *See* Doc. 47-1 p. 24-25. But that test applies only when the government contracts out a function that is "traditionally the *exclusive* prerogative of the State." *Rendell-Baker*, 457 U.S. at 842 (internal quotation marks omitted). Plaintiffs cite no authority suggesting that an election of officers for a non-governmental organization falls into the public-function category. Conducting elections is hardly an *exclusive* prerogative of the State, since elections are held by entities ranging from Fortune 500 companies to book clubs. Indeed, specifically in the context of elections, the Supreme Court has made clear that "[t]he ['public function'] doctrine does not reach to all forms of private political activity, but encompasses only state-regulated elections or elections conducted by organizations which in practice produce 'the uncontested choice of public officials.'" *Flagg Brothers, Inc.* v. *Brooks*, 436 U.S. 149, 158 (1978).

The Naʻi Aupuni election does not fit into this "carefully defined" scope. *Id.* As discussed above, the election is not related to the selection of any public offi-

---

ly subsume[d]" by the "public function" and "joint action" tests. Doc. 47-1 p. 24 (quoting *Ohno* v. *Yasuma*, 723 F.3d 984, 995 n.13 (9th Cir. 2013)).

cials. *See* pp. 20-24, *supra*. In addition, Plaintiffs identify no way in which the election is being regulated by OHA or any other state agency. While Plaintiffs contend that, in making a grant of trust funds, OHA contracted to have Naʻi Aupuni and the Akamai Foundation "carry out duties assigned to OHA and the NHRC under Act 195," Doc. 47-1 p. 24, Plaintiffs simply provide no support for that assertion. To the contrary, Act 195 does not establish any duties for OHA and OHA's grant agreement specifies that OHA will neither "directly or indirectly affect the decisions of [Naʻi Aupuni]" and that "[Naʻi Aupuni] has no obligation to consult with OHA or [the Akamai Foundation] on its decisions." Grant Agreement ¶ 3 (Dkt. No. 47-13).

> b. *The Naʻi Aupuni Election Does Not Satisfy The "Joint Action" Test*

Plaintiffs fare no better under the "joint action" test. "[J]oint action exists when the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Tsao* v. *Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (alteration and internal quotation marks omitted). Plaintiffs conclusorily assert that the "joint action" test is satisfied because Naʻi Aupuni and the Akamai Foundation "have entered into contractual arrangements in which they spend government funds to do work relating to voting" and are acting at the "contractual direction of OHA." Doc. 47-1 p. 26. That argument fails for several reasons.

*First*, it is factually erroneous that Naʻi Aupuni and the Akamai Foundation are conducting "election-related actions" at the direction of OHA. Plaintiffs do not substantiate that claim, and, as set forth above, the grant agreement between OHA and those entities specifies that OHA will not "directly or indirectly control or affect the decisions of [Naʻi Aupuni]" and that "[Naʻi Aupuni] has no obligation to consult with OHA or [the Akamai Foundation] on its decisions." Grant Agreement ¶ 3.

*Second*, Plaintiffs incorrectly imply that the government's provision of grant money to private organizations suffices to satisfy the "joint action" test. As the Supreme Court has explained, "[t]hat programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity." *Blum* v. *Yaretsky*, 457 U.S. 991, 1011 (1982); *accord San Francisco Arts & Athletics, Inc.* v. *United States Olympic Committee*, 483 U.S. 522, 544 (1987); *Rendell-Baker*, 457 U.S. at 840. The salient question is not whether the State provided funding to the recipient, but rather "what control . . . the State obtain[ed]" over the recipient. *Furumoto* v. *Lyman*, 362 F. Supp. 1267, 1279 (N.D. Cal. 1973). Here, the record is barren of evidence of any control by the State over Naʻi Aupuni. *See* pp. 7-9, *supra*.

Plaintiffs rely on a line of cases involving government contractors. *See* Doc. 47-1 p. 25-26. But Naʻi Aupuni is not properly classified as a contractor of the

State at all, because it is not performing any function that Act 195 had directed OHA or any other state agency to perform.  Instead, Na'i Aupuni is merely a grant recipient.  *See* Asam Decl. ¶ 14.  Nor would the government's use of a contractor suffice to support a "joint action" theory.  As the Supreme Court explained in *Rendell-Baker*, *supra*, "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  457 U.S. at 840-841; *accord Sever* v. *Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992).

In any event, the cases Plaintiffs cite are readily distinguishable.  In *Swift* v. *Lewis*, 901 F.2d 730 (9th Cir. 1990), the court noted, in a footnote, that a contractor who *participated* with prison officers in making a decision about an inmate's religious beliefs could be considered a state actor.  *Id.* at 732 n.2.  Likewise, in *Schowengerdt* v. *General Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987), the court noted, again in a footnote, that the private actor had "participated with the federal defendants in searching [plaintiff's] office."  *Id.* at 1332 n.3.  Plaintiffs' own cases thus demonstrate that, as the name suggests, the "joint action" test requires some kind of state action that the private actor is joining.  Here, there is no allegation that the State is engaging in any activity that Na'i Aupuni is joining.  Rather, Plaintiffs allege only that Na'i Aupuni entered into a contract with the State as part of receiving grant money to conduct an election on its own and that Na'i Aupuni is using information compiled by the State as part of that election.  Accordingly,

28

there is no state action under the "joint action" (or any other) test, and Plaintiffs cannot show a likelihood of success as to their challenge to the Na'i Aupuni election based on Counts 1-3 and 5-8.[10]

## II.  PLAINTIFFS ARE NOT LIKELY TO SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

Because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," plaintiffs seeking preliminary relief must show that "irreparable injury is *likely* in the absence of an injunction." *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  The mere *possibility* of irreparable harm is insufficient.  *See id.* Plaintiffs have failed to demonstrate imminent irreparable harm absent a preliminary injunction, and their motion should be denied on this independent ground.

---

[10] If the Court were to conclude that Na'i Aupuni's conduct is considered state action, Plaintiffs' Fourteenth Amendment claims would additionally fail under *Morton* v. *Mancari*, 417 U.S. 535 (1974). As explained in the State's brief, *see* State Br. Part III, *Mancari* applies with full force to Native Hawaiians, and any "special treatment" given to them by Hawai'i is constitutional as long as it can be "tied rationally to the fulfillment of Congress' unique obligation" toward Native Hawaiians.  417 U.S. at 555.  The restriction of the election to Native Hawaiians is rationally tied to Congress's and Hawai'i's responsibilities for Native Hawaiians. *See* State Br. Part III.C.  Additionally, Plaintiffs' Counts 7 and 8 fail because they are based on a fundamental right to vote, Doc. 47-1 p. 20-21, and there is no fundamental right to vote in a private election, *see* pp. 21-24, *supra*.  Plaintiffs are also incorrect that individuals are excluded from the election based on a refusal to make the declarations.

In all of a single sentence, Plaintiffs assert that they will suffer irreparable harm absent a preliminary injunction. *See* Doc. 47-1 p. 30. It is well established, however, that conclusory assertions of this sort do not suffice to demonstrate irreparable harm. *See, e.g., Herb Reed Enterprises, LLC* v. *Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007); *American Passage Media Corp.* v. *Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985).

As an attempted shortcut around showing irreparable harm, Plaintiffs assert that "[a]n alleged constitutional infringement will often alone constitute irreparable harm." Doc. 47-1 p. 30. While constitutional violations certainly *can* constitute irreparable harm in some circumstances, they do not do so automatically: even where courts find a constitutional violation, they still consider whether an irreparable injury is likely to occur. Indeed, in one of the cases cited by Plaintiffs, *Goldie's Bookstore, Inc.* v. *Superior Court of California*, 739 F.2d 466 (9th Cir. 1984), the court *denied* a preliminary injunction, based in part on plaintiff's "failure to prove irreparable injury" despite an alleged constitutional violation. *See id.* at 472.[11]

---

[11] The Supreme Court has made clear that courts may not presume irreparable harm. *See eBay, Inc.* v. *MercExchange, LLC*, 547 U.S. 388, 393-394 (2006). That is unsurprising, because presuming that a likelihood of success on a broad swath of claims creates an irreparable injury would impermissibly "collapse[] the likelihood

In fact, whether a constitutional violation gives rise to irreparable harm varies depending on the type of violation alleged. Of particular relevance here, courts routinely require a showing of irreparable harm, and do not presume it, in cases implicating equal protection. *See*, *e.g.*, *Arizona Dream Act Coalition* v. *Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014); *Northeastern Florida Chapter of Association of General Contractors of America* v. *City of Jacksonville*, 896 F.2d 1283, 1285-1286 (11th Cir. 1990); *see also Preminger* v. *Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (determining that there was no "significant irreparable harm" in the plaintiffs' inability to register certain residents to vote).

Even if Plaintiffs had attempted to make a showing of irreparable harm, Plaintiffs' own multiyear delay in filing this lawsuit is compelling evidence that there is no threat of irreparable harm. *See Garcia* v. *Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc); *Oakland Tribune, Inc.* v. *Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Taylor* v. *Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013). Act 195 was passed over four years ago; the Roll has been open for more than three years; and the names of certified Native Hawaiians on the Roll have already been published online. *See* pp. 4-6, *supra*. Yet Plaintiffs did not file this lawsuit until last month.

---

of success and the irreparable harm factors." *Herb Reed Enterprises*, 736 F.3d at 1251.

To the extent Plaintiffs are complaining of future, unidentified consequences from being unable to participate in a convention that a private actor (Naʻi Aupuni) anticipates holding, any such harm is far too speculative to warrant a preliminary injunction. As the Supreme Court has explained, "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter*, 555 U.S. at 22 (internal quotation marks and citation omitted). And Plaintiffs have failed to show that they would be unable to vindicate their asserted interest in participating in the "controversy over Native Hawaiian sovereignty," Doc. 47-1 p. 29, through some other means.

Nor can Plaintiffs rest their argument on any anticipated, speculative "outcome" of the convention process—which may or may not even play out to completion. In any event, there is certainly no basis to conclude that such a process will play out on a schedule that warrants a preliminary injunction. Indeed, even if Native Hawaiians choose to form a self-governing entity, such an entity would have no official legal status until it is recognized by the state or federal government. Should such an entity ever form and seek recognition, Plaintiffs will be able to urge their elected representatives to deny it.

## III. THE BALANCE OF EQUITIES DOES NOT FAVOR A PRELIMINARY INJUNCTION

Plaintiffs fail to establish their likelihood of success on the merits and likewise fail to show that irreparable harm will flow from the denial of a preliminary injunction. Accordingly, Plaintiffs cannot demonstrate that the balance of hard-

ships tips in their favor, let alone that it does so "sharply." *See Alliance for Wild Rockies* v. *Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

As to enjoining Act 195 and the Roll itself, "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Economic Equity* v. *Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Plaintiffs have pointed to nothing about the Roll that could outweigh the interests of the State and its people in avoiding this irreparable injury.

The same is true for Plaintiffs' election-related claims. As an initial matter, preventing Naʻi Aupuni from formulating its position on the public issue of Native Hawaiian sovereignty and choosing with whom to associate in that process would violate its core First Amendment rights. *See Boy Scouts of America* v. *Dale*, 530 U.S. 640, 648 (2000); *Roberts* v. *United States Jaycees*, 468 U.S. 609, 622 (1984); *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982); Naʻi Aupuni Br. Part II.A.2. Plaintiffs have not shown an injury sufficiently compelling to "outweigh[]" the First Amendment rights of Naʻi Aupuni and its members. *See Southwest Voter Registration Education Project* v. *Shelley*, 344 F.3d 914, 919-920 (9th Cir. 2003) (en banc).

To make matters worse, plaintiffs have waited until shortly before Naʻi Aupuni's election to bring this suit. On the date currently set for a hearing on Plaintiffs' motion, the following will have already occurred: (1) registration and verification of individuals eligible to participate in the election; (2) a notice of election

33

to registered voters; (3) publication of a list of qualified delegates; and (4) campaign activities by candidates. *See* Asam Decl. ¶¶ 25, 27. Granting an injunction at this time would significantly disrupt that complex process and detrimentally affect Native Hawaiians' efforts to organize.

## IV.  THE PUBLIC INTEREST IS NOT SERVED BY A PRELIMINARY INJUNCTION

"[W]here an injunction is asked which will adversely affect a public interest[,]  .  .  .  the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 312-313 (1982) (internal quotation marks and citation omitted). In fact, "courts should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Stormans, Inc.* v. *Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (ellipsis, internal quotation marks, and citation omitted).

Plaintiffs attempt to satisfy the public-interest requirement by invoking purported violations of their constitutional rights. But "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties," *Bernhardt*, 339 F.3d at 931 (internal quotation marks and citation omitted), and Plaintiffs have not identified any harm at all to non-parties to the suit. Nor does the bare assertion of a violation of Plaintiffs' constitutional rights "outweigh," the public interests on the other side. *See Cottrell*, 632 F.3d at 1138.

In fact, the public interests against issuing an injunction are considerable. While denying an injunction affects only plaintiffs, granting the injunction Plaintiffs seek would reach far beyond the parties in this case, implicating the thousands of Native Hawaiians who may wish to participate in the process of determining how to organize themselves and whether to seek recognition as a sovereign entity. Further, as "declared" in the passage of Act 195 itself, supporting an ongoing conversation about the status of Native Hawaiians is in the interest of *all* Hawaiians. *See Golden Gate Restaurant Association* v. *City & County of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008) (internal quotation marks and citation omitted).

Where the State Legislature has recognized the importance of this very process on an issue of distinct and unique local importance, *see* Haw. Rev. Stat. §§ 10H-2, 10H-5, the public interest militates strongly against an injunction by a federal court. *See Stormans*, 586 F.3d at 1140. The public-interest factor thus serves as an independent reason for denying the request for a preliminary injunction. *See id.*

//

//

//

//

331297.3

# CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.


DATED:  Honolulu, Hawaiʻi, September 30, 2015.


                      /s/ ROBERT G. KLEIN
                      ROBERT G. KLEIN
                      KANNON SHANMUGAM *(pro hac vice)*
                      ELLEN OBERWETTER *(pro hac vice)*
                      ELI SCHLAM *(pro hac vice)*

                      Attorneys for Defendants
                      ROBERT K. LINDSEY JR., COLETTE Y.
                      MACHADO, PETER APO, HAUNANI
                      APOLIONA, ROWENA M.N. AKANA,
                      JOHN D. WAIHEʻE IV, CARMEN HULU
                      LINDSEY, DAN AHUNA, LEINAʻALA
                      AHU ISA, and KAMANAʻOPONO
                      CRABBE